# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | | |
|---|---|---|
| **Nkenegen Hambrick and Shannon Jackson,** On behalf of themselves, and Others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) | |
| v. | ) ) | CIVIL ACTION  FILE NO. |
| FULTON COUNTY SHERIFF PATRICK LABAT, in his official capacity, and FULTON COUNTY CHIEF JAILER JOHN JACKSON, in his official capacity | ) ) ) ) | COMPLAINT – CLASS ACTION |
| Defendants. | ) ) | |

## CLASS ACTION COMPLAINT

Michael D. Harper
Patrick W. Leed
Michael D. Harper, P.C.
Buckhead Village District
3017 Bolling Way, N.E., Suite 150
Atlanta, Georgia 30305
Telephone: (404) 271-6618
Facsimile: (404) 600-2146
Email: Mharper@mharperlaw.com
PLeed@mharperlaw.com
*Counsel for Plaintiffs*

# TABLE OF CONTENTS

INTRODUCTION . . . . . 4

JURISDICTION AND VENUE . . . . 11

PARTIES . . . . 11

PLAINTIFFS . . . . 12

DEFENDANTS . . . . 14

ALLEGATIONS OF FACT . . . 15

I. Despite the presence of written policies and procedures for safety, housekeeping, and Jail Management, Fulton County Jail presents Obvious Hazards to the Health and Well-Being of its Detainees. . . . . 15

II. The proliferation of shanks, detainees popping open locked doors, incidents of violence, failures to appropriately classify detainees, and unsanitary living conditions at the Fulton County Jail continues unabated. . . . . 23

III. Defendants' failure to remedy the known hazards at Fulton County Jail is the cause of serious physical injuries, mental injuries, and death to Fulton County Jail Detainees. . . . . 27

IV. The unsanitary, bug-ridden conditions at Fulton County Jail, and Defendants' deliberate indifference to same, caused Plaintiff Nkenegen Hambrick to develop severe wounds and sores. . . . . 30

V. The prevalence of shanks, non-working and dysfunctional jail locks, failure to enforce an inmate classification plan, and Defendants' indifference to same, caused Plaintiff Shannon Jackson to suffer serious injuries from shanking attacks. . . . . 32

    A. CLASS ACTION ALLEGATIONS. . . . . . 34

    B. PUNITIVE DAMAGES ALLEGATIONS. . . . . 39

    C. CAUSES OF ACTION. . . . . 40

COUNT I – **42 U.S.C. § 1983 EIGHTH AMENDMENT AND FOURTEENTH AMENDMENT DELIBERATE INDIFFERENCE TO SUBSTANTIAL RISK OFHARM AND SERIOUS INJURY FROM PERVASIVE PRESENCE OF HANDMADE SHANKS.** . . . . 40

COUNT II – **42 U.S.C. § 1983 EIGHTH AMENDMENT AND FOURTEENTH AMENDMENT DELIBERATE INDIFFERENCE TO SUBSTANTIAL RISK OF HARM AND SERIOUS INJURY FROM NON-WORKING AND DYSFUCTIONAL DOOR LOCKING MECHANISMS.** . . . . 42

COUNT III – **42 U.S.C. § 1983 EIGHTH AMENDMENT AND FOURTEENTH AMENDMENT DELIBERATE INDIFFERENCE TO SUBSTANTIAL RISK OF HARM AND SERIOUS INJURY FROM DEEFNDANTS' FAILURE TO USE CORRECTIONAL PRACTICES SUCH AS CLASSIFICATION, HOUSING PLANS, ASSESSMENT OF THE LIKELIHOOD OF VICTIMIZATION, AND CONSIDERATION OF GANG AFFILIATIONS.** . . . . 45

COUNT IV - **42 U.S.C. § 1983 EIGHTH AMENDMENT AND FOURTEENTH AMENDMENT DELIBERATE INDIFFERENCE TO SUBSTANTIAL RISK OF HARM AND SERIOUS INJURY FROM FILTHY, PARASITE AND VERMIN INFESTED, AND OVERALL UNSANITARY CONDITIONS.** . . . . 48

COUNT V – **42 U.S.C. § 1983 EIGHTH AMENDMENT AND FOURTEENTH AMENDMENT DELIBERATE INDIFFERENCE TO SUBSTANTIAL RISK OF HARM AND SERIOUS INJURY FROM UNAUTHORIZED USE OF FORCE BY DETENTION OFFICERS.** . . . . 50

COUNT VI – **42 U.S.C. § 1983 EIGHTH AMENDMENT AND FOURTEENTH AMENDMENT DELIBERATE INDIFFERENCE TO SUBSTANTIAL RISK OF HARM AND SERIOUS INJURY FROM INADEQUATE PROVISION OF HEALTCHARE INLCUDING MENTAL HEALTHCARE.** . . . . 53

COUNT VII - **42 U.S.C. § 1983 EIGHTH AMENDMENT AND FOURTEENTH AMENDMENT DELIBERATE INDIFFERENCE TO SUBSTANTIAL RISK OF HARM AND SERIOUS INJURY FROM INADEQUATE STAFFING AND SUPERVISION TO KEEP DETAINEES SAFE.** . . . . 55

PRAYER FOR RELIEF . . . . 58

## INTRODUCTION

Plaintiffs respectfully file this complaint for declaratory relief, injunctive relief, and damages on behalf of themselves and a class of similarly situated individuals who have suffered or will suffer injuries because of Defendants' deliberate indifference to the known, excessive risks to the health and safety of detainees at Fulton County Jail, address 901 Rice St. NW, Atlanta, GA 30318, which violate the detainees' rights under the Eighth and Fourteenth Amendments of the United States Constitution.

1. This is an action to protect people detained in Fulton County Jail, address 901 Rice St. NW, Atlanta, GA 30318 (hereinafter "Fulton County Jail"), from serious harm by the cruel and unusual conditions of confinement at Fulton County Jail.

2. This is an action for damages to people who have been or in the future will be detained in Fulton County Jail and have suffered damages that arise from Defendants' deliberate indifference to the known, excessive risks to the health and safety of detainees at Fulton County Jail.

3. Fulton County Jail detainees are at constant risk of danger, serious personal injury, and death due to Fulton County Jail's crumbling infrastructure, which inmates use to craft makeshift knives, called "shanks," for use as weapons.

4. Fulton County Jail detainees are at constant risk of danger, serious personal injury, and death due to Fulton County Jail's failure to restrict access away from parts of the jail containing readily available materials for crafting shanks.

5. Fulton County Jail detainees are at constant risk of danger, serious personal injury, and death due to Defendants' failure to perform maintenance to remediate or replace non-working and dysfunctional jail cell doors that can be manipulated by inmates to enter or exit jail cells without authorization.

6. Fulton County Jail detainees are at constant risk of danger, serious personal injury, and death due to Defendants' failure to use correctional practices such as classification, housing plans, assessment of the likelihood of victimization, and consideration of gang affiliations to manage the incarcerated population and reduce the risk of violence.

7. Fulton County Jail detainees are at constant risk of danger, serious personal injury, and death due to Defendants' inadequate parasite and pest control measures, inadequate chemical control measures, their failure to remedy unclean and unhygienic jail living conditions, and insufficient and nutritionally inadequate food.

8. Fulton County Jail detainees are at constant risk of danger, serious personal injury, and death due to Defendants' failure to staff and train the Fulton County

Jail Detention Officers and Staff to protect detainees from attacks by other detainees.

9. Gross deficiencies in Fulton County Jail's provision of medical and mental health care expose detainees to an increased risk of injury, serious illness, pain and suffering, mental health decline, and death.

10. Fulton County Jail Incident Reports and Medical Records acquired from Fulton County Sheriff's Office via Open Records Requests demonstrate longstanding, pervasive, and well-documented dangers of serious bodily injuries and death caused by the use of shanks in attacks between rival detainees, by detainees popping open cell doors to exit their cells without authorization and to enter rival's cells to perform attacks, by the unsanitary conditions, by detention officers' use of excessive force, and by Fulton County Jail's failure to provide medical treatment for illnesses and injuries.

11. Under the Eighth and Fourteenth Amendments, a jail must protect detainees from known risks of serious injury and death. Farmer v. Brennan, 511 U.S. 825, 837 – 39 (1994).

12. In July 2023, the United States Department of Justice opened a civil rights investigation into conditions in the Fulton County Jail under the Civil Rights of Institutionalized Persons Act (CRIPA) 42 U.S.C. § 1997, the Americans

with Disabilities Act (ADA), 42 U.S.C. § 12132, and the Violent Crime Control and Law Enforcement Act, 34 U.S.C. § 12601.

13. On November 14, 2024, the Department of Justice released a 105-page report, titled Investigation of the Fulton County Jail, describing an extensive investigation into Fulton County Jail, and results, determinations, and recommendations for change. The Department of Justice report is attached herewith as Exhibit A.

14. From its investigation, the Department of Justice found reasonable cause to believe that Fulton County and the Fulton County Sheriff's Office violate the constitutional and statutory rights of people incarcerated in the Fulton County Jail. Exhibit A, p. v.

15. The Department of Justice determined that Fulton County Jail fails to adequately protect incarcerated people from the substantial risk of serious harm from violence, including from homicides and stabbings by other detainees, and due to its failure to use correctional practices such as classification, housing plans, assessment of the likelihood of victimization, and consideration of gang affiliations to manage the incarcerated population and reduce the risk of violence. Exhibit A, p. v. – vi; p. 17 sec. 2.

16. The Department of Justice determined that Fulton County Jail living conditions do not meet basic constitutional standards. Exhibit A, p. vi.

17. The Department of Justice determined that Jail deputies and detention officers use force against incarcerated people without adequate justification. Exhibit A, p. vi.

18. The Department of Justice determined that medical and mental health care in the Fulton County Jail does not meet constitutional standards. Exhibit A, p. vi.

19. The Department of Justice determined that restrictive housing conditions in the Jail pose a substantial risk of harm, including acute mental illness and self-injury, and restrictive housing practices are discriminatory and unlawful. Exhibit A, p. vi.

20. The Department of Justice determined that the Jail's grievance system does not offer incarcerated people an adequate way to report and avoid danger, and jail staff improperly avoid investigating and substantially responding to detainee's grievances, missing opportunities to address unsafe conditions. Exhibit A, p. 29 - 31.

21. The Department of Justice found that leadership at Fulton County and the Sheriff's Office are aware of the violence in the Jail and have publicly decried it, but have failed to take adequate action to address the crisis, and homicides, stabbings, and other violent acts continue at dangerous levels. Exhibit A, p. 8. sec. 1.

22. Plaintiffs expect to show that Defendants' failure to implement and execute policies or procedures to limit or eliminate hand-crafted shanks violates the 8th Amendment and 14th Amendment to the United States Constitution.

23. Plaintiffs expect to show that Defendants' failure to implement and execute policies or procedures to remedy non-working or dysfunctional cell door locks violates the 8th Amendment and 14th Amendment to the United States Constitution.

24. Plaintiffs expect to show that Defendants' failure to use correctional practices such as classification, housing plans, assessment of the likelihood of victimization, and consideration of gang affiliations to manage the incarcerated population and reduce the risk of violence violates the 8th Amendment and 14th Amendment to the United States Constitution.

25. Plaintiffs expect to show that Defendants' failure to implement and execute policies or procedures to remedy unsanitary, hazardous conditions violates the 8th Amendment and 14th Amendment to the United States Constitution.

26. Plaintiffs expect to show that Defendants' failure to train detention officers to prevent the unauthorized use of force violates the 8th Amendment and 14th Amendment to the United States Constitution.

27. Plaintiffs expect to show that Defendants' failure to provide adequate medical care, including access to mental health care, violates the 8th amendment and 14th amendment to the United States Constitution.

28. Plaintiffs expect to show that Defendants' failures described above are the cause in fact for detainees' exposure to serious bodily harm and death.

29. Plaintiffs expect to show that Defendants' failures described above are the cause in fact for Plaintiffs' injuries, entitling the Lead Plaintiffs and Class Plaintiffs to an award of damages.

30. Plaintiffs expect to show that Defendants have been deliberately indifferent to known risks of serious harm and death to detainees at Fulton County Jail.

31. Plaintiffs expect to show that Defendants know of and are consciously disregarding excessive risks to the health and safety of detainees at Fulton County Jail, in violation of the Eighth and Fourteenth Amendments to the Constitution of the United States. Farmer v. Brennan, 511 U.S. 825, 837 – 39 (1994), Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003).

32. The Lead Plaintiffs bring this action on behalf of themselves and similarly situated individuals for declaratory relief, injunctive relief, and for damages due to Defendants' deliberate indifference to the excessive risks to the health and safety of detainees at Fulton County Jail and to vindicate the detainees'

rights under the Eighth and Fourteen Amendments of the United States Constitution.

## JURISDICTION AND VENUE

33. This Court has jurisdiction over this action under 28 U.S.C. § 1331, because it raises claims arising under the United States Constitution, 42 U.S.C. § 1983; the Rehabilitation Act of 1973, 29 U.S.C. §§ et seq.; and Title II of the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12131 – 12133.

34. The Atlanta Division of the Northern District of Georgia is the proper venue under 28 U.S.C. §§ 1391(b)(1) and Local Rule 3.1B(1) because all defendants are Georgia residents and at least one defendant resides in the Atlanta Division of the Northern District of Georgia; and under 28 U.S.C. §§ 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in the Atlanta Division of the Northern District of Georgia.

## PARTIES

35. This Complaint is filed on behalf of Plaintiffs, and where applicable and/or necessary, this Complaint is also filed on behalf of Plaintiffs' spouses, children, parents, decedents, wards, heirs, and/or legally designated representatives.

36. Plaintiffs in these individual actions are citizens and/or residents of the United States who have suffered acute personal injuries, acute psychological

suffering or mental anguish, or death because of Defendants' deliberate indifference to the known, excessive risks to the health and safety of detainees at Fulton County Jail.

## PLAINTIFFS

37. Nkengen Hambrick is a forty-four-year-old male.

38. Shannon Jackson (A.K.A. Shannon Stillwell) was born in 1992 and is male.

39. The conditions under which a convicted inmate are held are scrutinized under the Eighth Amendment's prohibition on cruel and unusual punishment, and the conditions under which a pretrial detainee are held are reviewed under the Due Process Clause of the Fourteenth Amendment. Jacoby v. Baldwin Cty., 835 F.3d 1338, 1344 (11th Cir. 2016). Pretrial prison conditions may not be imposed to punish a pretrial detainee and impermissible punishment may be inferred if the prison condition at issue "is not reasonably related to a legitimate goal – if it is arbitrary or purposeless." Id. at 1345.

40. A valid prison conditions claim "has two components: (1) an objective component which requires that conditions be sufficiently serious,' . . . and (2) a subjective component which requires that prison officials exhibit 'deliberate indifference' to prisoner health or safety." Jordan v. Doe, 38 F.3d 1559, 1564 (11th Cir 1994) quoting Farmer v. Brennan, 511 U.S. 825, 834 (1994)). A prison condition.

41. The putative class includes individuals detained at Fulton County Jail who have suffered acute personal injuries, acute psychological suffering or mental anguish, or death because of Defendants' deliberate indifference to the known, excessive risks to the health and safety of detainees at Fulton County Jail, which do not serve a legitimate goal, including, but not limited to:

    (a) The known hazards arising from hand-made shanks; or

    (b) The known hazards arising from non-working or dysfunctional cell door locks; or

    (c) The known hazards arising from Defendants' failure to use correctional practices such as classification, housing plans, assessment of the likelihood of victimization, and consideration of gang affiliations; or

    (d) The known hazards arising from filthy, vermin and parasite-infested, unsanitary jail conditions; or

    (e) The known hazards arising from unauthorized use of force by Fulton County Jail detention officers; or

    (f) The known hazards arising from inadequate provision of medical care, including mental health care.

42. The conditions described in the preceding paragraph are sufficiently serious because they deprive detainees of "the minimal civilized measure of life's necessities" or otherwise "pose an unreasonable risk of serious damage to

13

health and safety." Chandler v. Crosby, 379 F. 3d 1278, 1289 (2004) (quoting

Helling v. McKinney, 509 U.S. 25, 35 (1993) and Rhodes v. Chapman, 452

U.S. 337, 347 (1981).

## DEFENDANTS

43. Defendant Patrick Labat is sued in his official capacity as the Sheriff of

Fulton County, Georgia, a position he has held since January 1, 2021.

Defendant Labat is the chief executive of the Fulton County Sheriff's Office.

Defendant Labat is responsible for the day-to-day operations of the Fulton

County Sheriff's Office, including the Fulton County Jail. As Sheriff, he is

required by Georgia law to operate the Fulton County Jail system, to maintain

the custody of people held in his jails, and to ensure safe and sanitary

conditions of confinement. *See* O.C.G.A. §§ 42-4-4, 42-4-5. Defendant Labat

is a resident of Fulton County, Georgia. At all times relevant to this complaint,

Defendant Labat has acted under color of state law. The Fulton County

Sheriff's Office is a program or entity receiving federal financial assistance.

See 29 U.S.C. § 794(b).

44. John Jackson is sued in his official capacity as Chief Jailer for the Fulton

County Sheriff's Office. Under the Fulton County Sheriff's Office Jail

Operations Standard Operating Guidelines, Chapter: Safety, Subject:

Sanitation Procedures, Inspections, and Housekeeping Program, effective

14

February 2, 2022, Section VII, the Chief Jailer shall appoint a Fire Safety and

Sanitation Supervisor and Fire Safety and Sanitation Officer, who are

collectively responsible for coordinating, conducting, and documenting fire,

safety and sanitation inspections by independent agencies. At all times

relevant to this complaint, Defendant Jackson has acted under color of state

law. The Fulton County Sheriff's Office Jail Operations Standard Operating

Guidelines, Chapter: Safety, Subject: Sanitation Procedures, Inspections, and

Housekeeping Program, effective February 2, 2022, is attached herewith as

Exhibit B.

## ALLEGATIONS OF FACT

**I. Despite the presence of written policies and procedures for safety, housekeeping, and Jail Management, Fulton County Jail presents Obvious Hazards to the Health and Well-Being of its Detainees.**

45. The main facility for holding Fulton County detainees is the Fulton County

    Jail, located at 901 Rice Street, N.W. in Atlanta.

46. Fulton County Jail was built in 1989.

47. Fulton County Jail has an operational capacity of around 1,900 people and has

    for many years operated at or above that capacity.

48. Fulton County Jail consists of a three-story low-rise structure joined to an

    elevator tower, providing access to two housing towers. The North Tower has

    seven floors for housing, and the South Tower has Six. Each housing unit has

15

eight zones arranged in a horseshoe around an elevated control tower. The housing zones have between 16 and 18 cells, split over two tiers. The cells open into a dayroom with tables bolted to the floor, phones, a kiosk (for ordering commissary and submitting grievances, among other things), and a shower on each tier. Ex. A, p. 5.

49. The primary entities responsible for the Jail are the Fulton County Sheriff's Office, which operates the jail, and Fulton County Board of Commissioners, which funds the jail.

50. The seven-member Fulton County Board of Commissioners is the governing body for Fulton County. Through the Board of Commissioners, Fulton County provides funding for the Jail and maintains the Jail facilities.

51. The County sets funding levels for the Sheriff's Office, but the Sheriff is an independent, elected official.

52. As stated above, the Sheriff is required by Georgia law to operate the jail system, to maintain the custody of people held in his jails, and to ensure safe and sanitary conditions of confinement. *See* O.C.G.A. §§ 42-4-4, 42-4-5.

53. Fulton County Sheriff's Office has adopted Jail Operations Standard Operations Procedures, which are divided into Chapters, such as Safety, and Subjects, such as 1) Sanitation Procedures, Inspections and Housekeeping

Program; 2) Facility Inspections; and 3) Housekeeping (Janitorial, Laundry, and Supplies Storage).

54. Subject: Sanitation Procedures, Inspections and Housekeeping Program, under Chapter: Safety, effective February 2, 2022, is attached herewith as Exhibit B.

55. Subject: Sanitation Procedures, Inspections and Housekeeping Program, under Chapter: Safety, effective June 14, 2023, is attached herewith as Exhibit C.

56. Subject: Housekeeping (Janitorial, Laundry, and Supplies Storage), under Chapter: Safety, effective February 11, 2024, is attached herewith as Exhibit D.

57. Subject: Facility Inspections, under Chapter: Safety, effective June 13, 2023, is attached herewith as Exhibit E.

58. Fulton County Sheriff's Office has adopted Jail Bureau Policies and procedures, which are divided into Subjects, including Classification/Security, and Indexes, such as Classification of Inmates, Classification Plan.

59. The Index: Classification of Inmates, Classification Plan, under Subject: Classification/Security, effective date May 18, 2006, is attached herewith as Exhibit F.

17

60. The polices identified in the preceding paragraphs and throughout this Complaint are not an exhaustive list of policies and procedures adopted by the Fulton County Sheriff for operations at Fulton County Jail.   Plaintiffs plan to uncover further policies and procedures that are relevant to this litigation and to Plaintiffs' allegations.

61. Defendant Labat has publicly admitted that he lacks the resources to carry out his legally mandated responsibility to protect the constitutional rights of pre-trial detainees at Fulton County Jail.

62. The risk of harm arising from the presence of handmade shanks, non-working or dysfunctional cell door locks, unsanitary bug-ridden conditions, and excessive use of force by detention officers is a longstanding and ongoing reality for detainees at Fulton County Jail.

63. Defendant Labat has explained to the Fulton County Board of Commissioners and to the general public on multiple occasions (including in 2021, 2022, and 2023) why there is such a proliferation of homemade knives and shanks at the Fulton County Jail. Detainees at the Jail fashion metallic weapons from the crumbling physical infrastructure of the Jail.

64. In the fall of 2021, Defendant Labat gave the Fulton County Board of Commissioners a tour of the Fulton County Jail. The tour allowed the Commissioners to observe firsthand the deteriorating infrastructure at the

18

Fulton County Jail, which infrastructure was and still is being used by inmates to fashion metallic knife-life weapons called shanks.

65. On or about April 20, 2022, a sweep of the Fulton County Jail resulted in the discovery of nearly one hundred knives or shanks.

66. In a dramatic and well-publicized appearance before the Atlanta City Council on October 3, 2022, Defendant Labat had a Jail guard roll a wheelbarrow full of shanks confiscated from the Fulton County Jail into the Atlanta City Council Chambers.

67. In a mid-July 2024 news conference, Defendant Labat stated that since June 1, 2024, there had been ten stabbings at the Jail and that seventy-five (75) knives/shanks had been confiscated.

68. Defendant Labat has, over a period of several years, repeatedly and vociferously decried the lack of Fulton County-allocated funds for urgent jail priorities such as inmate security, upkeep of deteriorating jail facilities, and staffing.

69. On July 21, 2023, representatives of the National Institute of Corrections (NIC), the U.S. Department of Justice (DOJ), and the Bureau of Justice Assistance (BJA) conducted a site visit to the Fulton County Jail. This site visit resulted from a September 20, 2022, request from Defendant Labat to the National Institute of Corrections for technical assistance.

70. Defendant Labat informed the NIC and BJA representatives that during his term thousands of homemade knives made of materials from the deteriorating facility had been confiscated at the Jail.

71. Defendant Labat also informed the NIC and BJA representatives that detainees often fashion weapons when they do not feel safe.

72. Defendant Labat advised members of the site visit team that the number of uniformed staff vacancies in the Jail was at a critical staffing shortage level.

73. According to Defendant Labat, a housing floor at the Jail should ideally have two officers in the housing control room, as well as three officers who constantly move through the six housing zones, providing safety and security tours, making inspections, and managing the people detained within the zones.

74. According to Defendant Labat, in practice, there is typically only one officer in the housing control room and, at most, one officer moving through the housing zones with nearly two hundred (200) detainees.

75. As stated above, the Department of Justice ("DOJ") launched an investigation into the Fulton County Jail on July 13, 2023.

76. The Department of Justice investigation was premised in part on the Civil Rights of Institutionalized Persons Act (CRIPA): 42 U.S.C. § 1997 et seq.

20

77. CRIPA authorizes the Department of Justice to investigate state institutions, including county jails, to determine whether incarcerated people are subjected to a pattern or practice of constitutional violations. 42 U.S.C. § 1997a (a).

78. Among the living conditions at the Fulton County Jail that led to the United States Department of Justice launching a formal investigation of the Jail are: filthy housing, filthy housing teeming with insects, unsanitary living conditions, structurally unsafe Jail facility, failure to provide adequate medical care, inadequate mental health care, and rampant violence.

79. Summarizing the reasons for the DOJ investigation, Attorney General Merrick B. Garland stated, "We launched this investigation into the Fulton County Jail based on serious allegations of unsafe, unsanitary living conditions at the jail, excessive force and violence within the jail, discrimination against incarcerated individuals with mental health issues, and failure to provide adequate medical care to incarcerated individuals."

80. Ryan Buchanan, United States Attorney for the Northern District of Georgia, joined Attorney General Garland, providing his view of the justification for the DOJ investigation, stating, "The recent allegations of filthy housing teeming with insects, rampant violence resulting in death and injuries, and officers using excessive force are cause for grave concern and warrant a thorough investigation."

81. According to Assistant Attorney General Kristin Clarke, the DOJ's ongoing investigation of the Fulton County Jail revealed that at one point in 2022, more than two hundred weapons were discovered during a sweep of the main jail.

82. Condemning the Fulton County Jail, Assistant Attorney General Kristen Clarke said, "The unconstitutional conditions that we see too often inside jails and prisons have no place in society today."

83. "Our investigation into these matters is guided by one core principle: People held in jails and prisons do not surrender their constitutional and civil rights at the jailhouse door," Clarke said.

84. According to Clarke, 87% of the jail population in Fulton County is Black and the vast majority have not been convicted. They are awaiting bail hearings, competency evaluations and restoration services or are detained because of their inability to post bail.

85. DOJ investigators reported credible allegations that inmates of the jail are housed in a facility considered "structurally unsafe," and that correctional officers are using excessive force, and that violence is widespread, resulting in serious injuries and murders.

**II. The proliferation of shanks, detainees popping open locked doors, incidents of violence, failures to appropriately classify detainees, and unsanitary living conditions at the Fulton County Jail continues unabated.**

86. The DOJ's November 14, 2024 report states that three months after a detainee's arrest, that detainee died in a filthy cell in the mental health unit of Fulton County Jail . . . A medical examiner reported that his malnourished body was infested with an "enormous presence of body lice," and concluded that he was 'neglected to death.'" Exhibit A, p. v.

87. The DOJ's report identified a Naphcare report that found that every person in the mental health housing unit, meaning about 100 people, had lice, scabies, or both. An infection control report documented 204 ectoparasite cases in the Jail, and there were also outbreaks in preceding months: 36 ectoparasite cases in June 2022, 151 in July 2022, and 55 in August 2022. Both medical and custodial staff were aware of the extent of the issue, as the infection control reports were shared at meetings both medical and custodial leaders attended. Exhibit A., p. 47.

88. In 2023, Defendant Naphcare announced that it planned to terminate its contract because of violence and unsafe working conditions in the Jail. Ultimately, the dispute was resolved, and Naphcare remains the current healthcare provider. Exhibit A. p. 3 - 4.

89. Open Records Requests to the Sheriff's Office for Jail Incident Report demonstrates the prevalence of shanks and cell doors that can be popped open as recently as August 24, 2024. A Jail Incident Report dated August 24, 2024, memorializes an incident wherein a detention officer discovered a cell door tampered with and open, and learned from a detainee that the detainees in that cell had burned a hole in the cell door and then popped the cell door open just prior to lockdown. Upon searching the cell, detention officers discovered "various metal sharp-like objects on the top bunk and inside the light fixture, and a piece of concrete stuffed inside a sock." One of the residents of the cell claimed ownership of one of the shanks, claiming it was for his protection. Other shanks went unclaimed. Two of the shanks had burn marks on them, indicating that they had been used in burning the lock. The August 24, 2024, Jail Incident Report is attached hereto as Exhibit G.

90. A Jail Incident Report memorializes an incident on August 12, 2024, when a detainee hid five handmade shanks under his clothes, and told detention officers that "the reason he has shanks is for protection against others. Inmate Smith also stated he has more where that came from, and he can buy more." A subsequent search of Inmate Smith's cell uncovered a shank underneath the mattress, and other contraband items. The August 12, 2024, Jail Incident Report memorializing this incident is attached hereto under Exhibit H.

91. A Jail Incident Report dated August 10, 2024, memorializes deliberate indifference to the health and safety of an LGBTQ Detainee. On August 10, 2024, tower officers reported to a detention officer that detainees in zone 5 South were not happy with an LQBTQ man in the zone. The detention officer found detainee Jones standing by the phones. The detention officer "explained to zone 500, that they can't dictate who can and who can't stay in the dorm." As the detention officer was exiting zone 500, a detainee Jones rushed out of the zone door, while stating that "he was not fucking staying in here." The detention officer then used her taser on detainee Jones. The August 10, 2024, Jail Incident Report is attached hereto under Exhibit H.

92. The Jail Bureau Policies and Procedures for Classification of Inmates, Classification Plan, effective May 18, 2006, states: "The classification system is used to separate inmates into groups that reduce that probability of assault and disruptive behavior, at a minimum, the classification system evaluates the following: Medical and Emotional Stability . . . [and] [N]eed to keep separate." Exhibit F, p. 1.

93. The Jail Bureau Policies and Procedures for Classification of Inmates, Classification Plan, effective May 18, 2006, "The housing zones are double bunked except for the sixth and seventh floors of each tower, which are single bunked. Id. p. 20.

94. Under the authority in <u>Farmer v. Brennan</u>, a case involving a transgender inmate, "if an Eighth Amendment Plaintiff presents evidence showing that a substantial risk of inmate attacks was 'longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official being sued has been exposed to information concerning the risk and thus 'must have known about it, then such evidence could be sufficient to permit a trier of fact to find that the defendant-official had actual knowledge of the risk." <u>Farmer v. Brennan</u>, 511 U.S. 825, 842 – 843 (1994). "The question under the Eighth Amendment is whether prison officials, acting with deliberate indifference, exposed a prisoner to a sufficiently substantial 'risk of serious damage to his future health.'" <u>Id</u>.

95. The August 10, 2024, incident report concerns an LGBTQ detainee being openly harassed by detainees in a double bunked zone. The detention officer's meager explanation, to all detainees in that zone, that detainees cannot decide who is in their zone, is clearly non-compliant with the Jail Bureau Policies and Procedures for Classification of Inmates, Classification Plan, effective May 18, 2006, because it shows deliberate indifference to a demonstrated probability of assault and disruptive behavior expressed by the detainee victim and detainee aggressors.

26

96. Under <u>Farmer v. Brennan</u>, a trier of fact may find that the official had actual knowledge of the risk, and then acted with deliberate indifference, exposing the LGBTQ detainee to a sufficiently substantial 'risk of serious damage to his future health.'" In response to the detention officer's deliberate indifference, the LGBTQ detainee rushed out of the zone, seeking safety, and was tazed by the same detention officer.

## III. Defendants' failure to remedy the known hazards at Fulton County Jail is the cause of serious physical injuries, mental injuries, and death to Fulton County Jail Detainees.

97. The experiences of the Lead Plaintiffs and other detainees at Fulton County Jail described above illustrate the longstanding, pervasive, and well-documented risks of serious damage to detainees' health and well-being at Fulton County Jail.

98. The living conditions of the detainees at the Fulton County Jail directly contribute to the fear of detainees, deterioration of the mental health of detainees, and further escalate the violence.

99. The Defendants' failures set forth throughout this Complaint and in the DOJ Report at Exhibit A directly contribute to the proliferation of violence at the Jail.

100. According to the Department of Justice Report, within weeks of its opening its investigation of Fulton County Jail in July 2023, six more black

men died in the jail. One person was found unresponsive in his cell after his cellmate strangled him. And days later, tensions in the jail erupted in violence: within 24 hours, five units in the Jail saw violent assaults, at least seven people were stabbed, and one person was killed. Exhibit A, p. v.

101.    On September 23, 2022, Dino Walker was murdered by rival detainees wielding shanks at the Fulton County Jail.

102.    On September 23, 2022, at the time Dino Walker was killed, there was not a single officer moving through the six housing zones on his floor.

103.    The presence of a uniformed staff member or on the cell block deserted by uniformed staff on September 22, 2022, might arguably have discouraged the knife attack on Dino Walker.

104.    On October 19, 2022, Shamar McLeroy was murdered by his Fulton County Jail cellmate Jeremiah Collier. Jeremiah Collier was a known murderer with mental health issues.

105.    On or about June 21, 2022, Anthony Jenkins was murdered by his cellmate at Fulton County Jail.

106.    On August 31, 2023, Dayvion Blake was stabbed to death by rival inmates wielding shanks. In the month leading up to his death, Dayvion Blake had been on suicide watch, had been receiving medication for schizophrenia,

and Naphcare medical professionals had released Dayvion Blake to general population after a brief stay in the medical ward.

107.     In response to an Open Records Request for dates of inmate deaths, as well as cause of death at Fulton County Jail from January 1, 2018, to September 9, 2024, Fulton County Sheriff's Office responded with the names of forty-four (44) detainees, and their dates of death, but did not include a cause of death. The list of detainee deaths and date of death is attached herewith as Exhibit I.

108.     Defendant Labat has been aware that detainees at the Fulton County Jail lived under conditions that subject them to the substantial risk of serious harm and death.

109.     The Fulton County Board of Commissioners has been aware that detainees at the Fulton County Jail lived under conditions that could subject them to the substantial risk of serious harm.

110.     Defendant Labat was and remains a direct and proximate cause of the injuries, damages, and deaths of countless detainees at Fulton County Jail.

111.     Because of Defendant Patrick Labat's deliberate indifference, Class Plaintiffs are entitled to an award of damages for injuries, pain and suffering of mind and body, and death. Farmer v. Brennan, 511 U.S. 825, 837 – 39 (1994).

112.    Defendants have failed to address known safety issues, even though Jail Incident Reports, public statements by Sheriff Patrick Labat, and other means of reporting have presented facts from which Defendants have inferred that an overt and obvious substantial risk of serious harm exists for detainees at Fulton County Jail.

113.    Upon information and belief, the number of incidents of violence arising from hand-made shanks, non-working or dysfunctional cell door locks, unsanitary conditions, excessive use of force, and the jail's failure to classify detainees, is grossly underestimated in Fulton County Jail Incident Reports obtained via Open Records Requests to the Fulton County Sheriff's Office.

114.    Plaintiff plans to uncover further defendants whose deliberate indifference caused injuries to detainees at Fulton County Jail in violation of the Eighth and Fourteenth Amendments to the Constitution.

**IV. The unsanitary, bug-ridden conditions at Fulton County Jail, and Defendants' deliberate indifference to same, caused Plaintiff Nkenegen Hambrick to develop severe wounds and sores.**

115.    Plaintiff Hambrick was incarcerated at Fulton County Jail from January 19, 2023, to June 21, 2023.

116.    During his detention, Plaintiff Hambrick suffered severe wounds and sores on his torso and lower body as a result of the unsanitary conditions at the jail.

30

117.    On May 25, 2023, Plaintiff Hambrick was found lying on the floor face down in his cell on the 4th Floor of the North Tower.   The handwritten medical emergency code report memorializing this incident is attached herewith as Exhibit J.

118.    The handwritten Medical Emergency Code Report dated May 25, 2023, states that responders were unable to assess Plaintiff Hambrick's neurological condition.

119.    The handwritten May 25, 2023, Medical Emergency Code Report states that Plaintiff Hambrick was non-verbal, had rashes to his back and torso, and had negative physical findings for seizures, but the responder was unable to fully examine Mr. Hambrick.

120.    Naphcare service records demonstrate that Plaintiff Hambrick underwent treatment for sores on his back and right arm for dates May 6, 2023, to June 28, 2023. Naphcare service records memorializing Plaintiff Hambrick's complaints and treatment are attached herewith as Exhibit K.

121.    In addition to the sores, Plaintiff Hambrick complained of mood instability and received medications to treat manic episodes, schizophrenia, and bipolar disorder.

31

122.     Following Mr. Hambrick's release, he treated at Peachtree Medical Center, Fayetteville. Peachtree Medical Center Records, are attached herewith as Exhibit L.

123.     On July 13, 2023, medical providers at Peachtree Medical Center noted the reason for Mr. Hambrick's visit: "pt was in prison Jan 19th – June 20th. [h]as 20ish stab wounds, feels like he has bug bites, possible spider bite on back of leg." Exhibit L. p. 1. James Tippett, MD, noted the following: "Multiple skin ulcerations on the trunk and extremities of various size. There are erythematous and superficial. There is a very large ulceration on his inner right thigh." Exhibit L. p. 9.

124.     Photographs of Mr. Hambrick taken shortly after his release from Fulton County Jail demonstrate the serious harm caused by Defendants' indifference to a known risk of harm at Fulton County Jail, and are attached hereto as Exhibit M.

**V. The prevalence of shanks, non-working and dysfunctional jail locks, failure to enforce an inmate classification plan, and Defendants' indifference to same, caused Plaintiff Shannon Jackson to suffer serious injuries from shanking attacks.**

125.     On July 4, 2022, Plaintiff Jackson suffered serious injuries in an arranged shanking attack and attempted murder in Zone 500 on the 5th Floor of the South Tower at Fulton County Jail.

126.    Before the July 4, 2022, shanking attack, Plaintiff Jackson was relocated from Zone 100 on the Fifth Floor of the South Tower to Zone 500 on the Fifth Floor in the South Tower.

127.    Detainee Jalon Stanley held a grudge against Plaintiff Jackson and orchestrated an attack on Plaintiff Jackson.

128.    Detainee Jalon Stanley was able to perform the attack by interfering with the security operations of cell number 517.

129.    Plaintiff Jackson was taken to Grady Hospital for injuries suffered in the July 4, 2022, shanking attack.

130.    If Plaintiff Jackson had been moved to a different floor, instead of a different zone on the same floor, then Detainee Jalon Stanley would not have had an opportunity to perform an attack.

131.    The July 4, 2022, jail incident report is attached herewith as Exhibit N.

132.    On December 10th, 2023, Plaintiff Jackson suffered serious injuries in an orchestrated shanking attack and attempted murder in his housing cell 412 on the 6th Floor of the North Tower.

133.    Detention Officer Shawon Nash was assigned to the 6th Floor of the North Tower as the Floor Officer.

134.    Detention Officer Shawon Nash saw suspicious activity in zone, so attempted to investigate, at which point detainee Lester Walker tried to

prevent Detention Officer Nash from investigating, saying the detainees were arguing about the game that was on.

135.     Detention Officer Nash investigated further, causing detainees to scatter, then Officer Nash discovered Plaintiff Jackson covered in blood and requesting medical attention.

136.     Detainee Willie Brown had entered Plaintiff Jackson's cell and used a shank to cause serious personal injuries to Plaintiff Jackson.

137.     Plaintiff Jackson was taken to Grady Hospital for injuries suffered in the December 10th, 2023, shanking attack.

138.     Detainee Willie Brown did not suffer any injuries in the December 10, 2023, shanking attack on Plaintiff Jackson.

139.     There was no tower officer assigned to the 6th Floor of the North Tower at the time of the attack on Plaintiff Jackson.

140.     If there had been a tower officer on the 6th Floor of the North Tower, that tower officer would have deterred the attack on Plaintiff Jackson.

141.     The December 10, 2023, Jail Incident Report is attached herewith as Exhibit O.

## A. CLASS ACTION ALLEGATIONS

142.     Plaintiffs bring this action under Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and a class of similarly situated persons.

143.    In accordance with Local Rule 23.1(A)(2), plaintiffs make the following class action allegations concerning the class:

144.    Plaintiffs seek to certify a class defined as follows: All persons that have been and will be detained in Fulton County Jail, address 901 Rice St. NW, Atlanta, GA 30318, and who have suffered acute personal injuries, acute psychological suffering or mental anguish, or death because of Defendants' deliberate indifference to the known, excessive risks to the health and safety of detainees at Fulton County Jail.

145.    Plaintiffs meet the requirements of FRCP 23(a)(1) for the following reasons:

(a) The class is so numerous that joinder of all members of the class is impracticable. Plaintiffs expect to show that the class consists of upward of 1,900 people, representing the Jail's capacity for a single day, who have suffered acute injuries as described above, and an unknown number of people who will be detained in the future. The class membership is ascertainable by consulting Fulton County Jail initial intake questionnaires/reports and similar questionnaires/reports prepared upon the detainee's release, Jail Incident Reports, Jail Disciplinary Records, records concerning classification and housing placements for detainees, Naphcare medical health records, medical

records from providers that regularly service Fulton County Jail detainees, such as Grady Hospital, and medical records from a medical provider that a detainee visits promptly after release for treatment of an acute injury at Fulton County Jail.

(b) There are questions of law and fact common to the class. The first question is whether an acute injury occurred while the person was detained at Fulton County Jail. Following that determination, common questions of fact include: (1) whether acute injuries occurred at the hands of a rival detainee wielding a shank; (2) whether acute injuries occurred because a rival detainee popped open a cell door without authorization; (3) whether the Plaintiff suffered harm when housed in a zone that was patently unsafe and such danger was documented or should have been documented as unsafe for that detainee; (4) whether the detainee suffered injury or deleterious health effects from unsanitary living conditions such as vermin or parasites, or unsanitary food; (5) whether excessive force was used that would amount to a waiver of qualified immunity for the officer using force; and (6) whether the medical care provided to detainees conforms to the degree of skill and care ordinarily required by the medical profession in general, under like conditions, and similar circumstances. The final

legal question is whether the act causing injury was in violation of that Plaintiff's Eight Amendment or Fourteenth Amendment rights.

(c) The policies and practices challenged in this action apply to detainees at Fulton County Jail, with equal force to Lead Plaintiffs Nkengen Hambrick and Shannon Jackson and all members of the class, so that Plaintiffs' claims are typical of those of the class. Plaintiff Hambrick suffered serious injuries due to the unsanitary, vermin infested conditions at Fulton County Jail. Plaintiff Jackson suffered personal injuries at the hands of detainees wielding shanks, who manipulated doors open to attack Plaintiff Jackson, and at a time when no tower officer was assigned to his floor. Plaintiffs have been or are currently subject to the same challenged policies and practices as the class members and have faced or still face the same risk of harm as the class members.

(d) Plaintiffs and their counsel will adequately protect the interests of the class. Plaintiffs possess no interests adverse to those of other class members. Plaintiffs are represented by the law firm Michael D. Harper, P.C., and Michael D. Harper has ten years of experience handling section 1983 claims for the deprivation of civil rights under the Eighth Amendment and Fourteenth Amendment to the Constitution, as well as

cases of medical malpractice in a jail setting. Michael Harper was the lead counsel for the family of Lashawn Thompson, the detainee who was found dead and covered with lice and bed bugs in Fulton County Jail, in the case against Fulton County Jail. Michael D. Harper has devoted substantial resources and time to investigating this case, including multiple visits to Fulton County Jail, extensive document collection and review, interviews of class members, and interviews of other detainees and their family members.

146.    Plaintiffs meet the requirements of Rule 23(b)(1) and (b)(2) in that Defendants have acted or failed to act on grounds that apply generally to the class, so that final declaratory relief and injunctive relief is appropriate respecting the class as a whole. Plaintiffs seek to represent the class in challenging the constant and known risk of danger, serious personal injury, and death to detainees at Fulton County Jail. Violence and danger run rampant throughout the multi-tiered Fulton County Jail structure. A single class action suit against the entities that provide essential funding and perform operations management is necessary to achieve consistent, permanent change throughout the jail, and protect the rights of class actions plaintiffs and future detainees. Any prospective relief granted to Plaintiffs with respect to those matters will necessarily benefit each member of the class.

147.     For the foregoing reasons, administrative remedies were unavailable.
See Exhibit A., pg. 29 – 31.

## B. **EXEMPLARY/PUNITIVE DAMAGES ALLEGATIONS**

148.     Defendants' conduct as alleged herein was done with reckless disregard
for human life, oppression, and malice. The substantial risk of serious harm
and death to detainees at Fulton County Jail was longstanding, pervasive,
well-documented, and expressly noted by Fulton County Jail officials.
Leadership at the Sheriff's Office and Fulton County Jail are aware of the
violence in the Jail and have publicly decried it. Yet they have failed to take
adequate action to address the crisis, and homicides, stabbings, and other
violent acts continue at dangerous levels.

149.     This was not done by accident or through some justifiable negligence.
Such conduct was done with conscious disregard of Plaintiffs' rights under the
Eighth and Fourteenth Amendments to the Constitution.

150.     Accordingly, Plaintiffs request punitive damages (where available)
against Defendants for the harms caused to Plaintiffs.

## C. CAUSES OF ACTION

## COUNT I

### 42 U.S.C. § 1983 EIGHTH AMENDMENT AND FOURTEENTH AMENDMENT DELIBERATE INDIFFERENCE TO SUBSTANTIAL RISK OF HARM AND SERIOUS INJURY FROM PERVASIVE PRESENCE OF HANDMADE SHANKS

151.     The Lead Plaintiffs and Class Plaintiffs are entitled to the protection of constitutional rights under the Eighth Amendment and Fourteenth Amendment including protection from deliberate indifference to their safety and well-being.

152.     At all relevant times, the collective Defendants were responsible for operating Fulton County Jail, funding operations at Fulton County Jail, directing activities of staff, detention officers, and detainees at Fulton County Jail, and conducting, documenting, and performing necessary and essential functions in the operation of Fulton County Jail.

153.     The claims against Defendants are based on the negligence, policies, customs, and deliberate indifference of Defendant Sheriff Labat, Defendant Jackson, and all medical and administrative staff and detention officers responsible for the conditions at Fulton County Jail.

154.     At all relevant times, Defendants acted under the color of state law.

155.     At all relevant times, Defendant Naphcare and medical professionals employed by Naphcare, acted with deliberate indifference to the serious medical needs of the Class Action Plaintiffs, which constitutes the unnecessary and wanton infliction of pain to Class Action Plaintiffs. Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003) *citing* Estelle v. Gamble, 429 U.S. 97, 104 (1976).

156.     Fulton County Jail detainees are at constant danger of serious personal injury and death due to Fulton County Jail's crumbling infrastructure, which inmates use to craft makeshift knives, called "shanks," for use as weapons.

157.     The Jail Incident Reports attached herewith as Exhibits G, H, N, and O memorialize incidents in which numerous shanks are uncovered, in which detainees state they keep shanks for protection, that they can buy shanks from others, and incidents in which shanks are used in assaults on detainees, including Plaintiff Jackson.

158.     Each Defendant is aware that the pervasive presence of handmade shanks presents an excessive risk to the health and safety of detainees at Fulton County Jail, and each Defendant has failed to take steps to reduce the risk of harm, violating the Eighth and Fourteenth Amendment prohibition against cruel and unusual punishment.

159.     As a direct and proximate result of Defendants' deliberate indifference to excessive risks of harm, Plaintiffs have been injured, suffered severe and permanent pain, suffering, disability, impairment, loss of enjoyment of life, loss of care, loss of comfort, and economic damages, including but not limited to past and future medical expenses, lost income, and other damages. Plaintiffs may also require additional medical and/or hospital care, attention, and services in the future.

160.     Plaintiffs seek compensatory and punitive damages, together with interest, to compensate them for the violations of their rights by Defendants.

161.     Plaintiffs seek declaratory and injunctive relief on behalf of themselves and a class of similarly situated persons to prevent further violations of their rights by Defendants.

## COUNT II

**42 U.S.C. § 1983 EIGHTH AMENDMENT AND FOURTEENTH AMENDMENT DELIBERATE INDIFFERENCE TO SUBSTANTIAL RISK OF HARM AND SERIOUS INJURY FROM NON-WORKING AND DYSFUCTIONAL DOOR LOCKING MECHANISMS**

162.     The Lead Plaintiffs and Class Plaintiffs are entitled to the protection of constitutional rights under the Eighth Amendment and Fourteenth Amendment including protection from deliberate indifference to their safety and well-being.

163.    At all relevant times, the collective Defendants were responsible for operating Fulton County Jail, funding operations at Fulton County Jail, directing activities of staff, detention officers, and detainees at Fulton County Jail, and conducting, documenting, and performing necessary and essential functions in the operation of Fulton County Jail.

164.    The claims against Defendants are based on the negligence, policies, customs, and deliberate indifference of Defendant Sheriff Labat, Defendant Jackson, and all medical and administrative staff and detention officers responsible for the conditions at Fulton County Jail.

165.    At all relevant times, Defendants acted under the color of state law.

166.    At all relevant times, Defendant Naphcare and medical professionals employed by Naphcare, acted with deliberate indifference to the serious medical needs of the Class Action Plaintiffs, which constitutes the unnecessary and wanton infliction of pain to Class Action Plaintiffs. Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003) *citing* Estelle v. Gamble, 429 U.S. 97, 104 (1976).

167.    Fulton County Jail detainees are at constant danger of serious personal injury and death due to the persistent failures of locking mechanisms for cell doors and zone doors throughout Fulton County Jail.

43

168. The Jail Incident Report attached herewith as Exhibits G documents an incident of a cell door being popped open in the South Tower, and the Jail Incident Report attached herewith as Exhibit P documents cell doors being repeatedly popped open in the North Tower.

169. Each Defendant is aware that non-working and dysfunctional cell door locking mechanisms present an excessive risk to the health and safety of detainees at Fulton County Jail, and each Defendant has failed to take steps to reduce the risk of harm, violating the Eighth and Fourteenth Amendment prohibition against cruel and unusual punishment.

170. As a direct and proximate result of Defendants' deliberate indifference to excessive risks of harm, Plaintiffs have been injured, suffered severe and permanent pain, suffering, disability, impairment, loss of enjoyment of life, loss of care, loss of comfort, and economic damages, including but not limited to past and future medical expenses, lost income, and other damages. Plaintiffs may also require additional medical and/or hospital care, attention, and services in the future.

171. Plaintiffs seek compensatory and punitive damages, together with interest, to compensate them for the violations of their rights by Defendants.

172.    Plaintiffs seek declaratory and injunctive relief on behalf of themselves

and a class of similarly situated persons to prevent further violations of their

rights by Defendants.

## COUNT III

**42 U.S.C. § 1983 EIGHTH AMENDMENT AND FOURTEENTH
AMENDMENT DELIBERATE INDIFFERENCE TO SUBSTANTIAL RISK
OF HARM AND SERIOUS INJURY FROM DEEFNDANTS' FAILURE TO
USE CORRECTIONAL PRACTICES SUCH AS CLASSIFICATION,
HOUSING PLANS, ASSESSMENT OF THE LIKELIHOOD OF
VICTIMIZATION, AND CONSIDERATION OF GANG AFFILIATIONS**

173.    The Lead Plaintiffs and Class Plaintiffs are entitled to the protection of

constitutional rights under the Eighth Amendment and Fourteenth

Amendment including protection from deliberate indifference to their safety

and well-being.

174.    At all relevant times, the collective Defendants were responsible for

operating Fulton County Jail, funding operations at Fulton County Jail,

directing activities of staff, detention officers, and detainees at Fulton County

Jail, and conducting, documenting, and performing necessary and essential

functions in the operation of Fulton County Jail.

175.    The claims against Defendants are based on the negligence, policies,

customs, and deliberate indifference of Defendant Sheriff Labat, Defendant

Jackson, Defendant Naphcare, and all medical and administrative staff and detention officers responsible for the conditions at Fulton County Jail.

176.    At all relevant times, Defendants acted under the color of state law.

177.    At all relevant times, Defendant Naphcare and medical professionals employed by Naphcare, acted with deliberate indifference to the serious medical needs of the Class Action Plaintiffs, which constitutes the unnecessary and wanton infliction of pain to Class Action Plaintiffs. Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003) *citing* Estelle v. Gamble, 429 U.S. 97, 104 (1976).

178.    Fulton County Jail's classification system does not conform to generally accepted jail practices, because it relies almost exclusively on arrest charges and ignores other risk factors, including in custody conduct. Exhibit A, p. 17.

179.    The August 10, 2024, Jail Incident Report attached herewith under Exhibit H demonstrates an incident wherein a detention officer displayed deliberate indifference to a detainee's safety and well-being by ignoring the conduct of the detainee and rival detainees in the same housing zone.

180.    Each Defendant is aware that the Jail's failure to effectively implement jail practices for classification, housing plans, assessment of the likelihood of victimization, and consideration of gang affiliations, contributes to and

perpetuates an excessive risk to the health and safety of detainees at Fulton County Jail, and each Defendant has failed to take steps to reduce the risk of harm, violating the Eighth and Fourteenth Amendment prohibition against cruel and unusual punishment.

181.     As a direct and proximate result of Defendants' deliberate indifference to excessive risks of harm, Plaintiffs have been injured, suffered severe and permanent pain, suffering, disability, impairment, loss of enjoyment of life, loss of care, loss of comfort, and economic damages, including but not limited to past and future medical expenses, lost income, and other damages. Plaintiffs may also require additional medical and/or hospital care, attention, and services in the future.

182.     Plaintiffs seek compensatory and punitive damages, together with interest, to compensate them for the violations of their rights by Defendants.

183.     Plaintiffs seek declaratory and injunctive relief on behalf of themselves and a class of similarly situated persons to prevent further violations of their rights by Defendants.

## COUNT IV

## 42 U.S.C. § 1983 EIGHTH AMENDMENT AND FOURTEENTH AMENDMENT DELIBERATE INDIFFERENCE TO SUBSTANTIAL RISK OF HARM AND SERIOUS INJURY FROM FILTHY, PARASITE AND VERMIN INFESTED, AND OVERALL UNSANITARY CONDITIONS

184.    The Lead Plaintiffs and Class Plaintiffs are entitled to the protection of constitutional rights under the Eighth Amendment and Fourteenth Amendment including protection from deliberate indifference to their safety and well-being.

185.    At all relevant times, the collective Defendants were responsible for operating Fulton County Jail, funding operations at Fulton County Jail, directing activities of staff, detention officers, and detainees at Fulton County Jail, and conducting, documenting, and performing necessary and essential functions in the operation of Fulton County Jail.

186.    The claims against Defendants are based on the negligence, policies, customs, and deliberate indifference of Defendant Sheriff Labat, Defendant Jackson, and all medical and administrative staff and detention officers responsible for the conditions at Fulton County Jail.

187.    At all relevant times, Defendants acted under the color of state law.

188.    At all relevant times, Defendant Naphcare and medical professionals employed by Naphcare, acted with deliberate indifference to the serious medical needs of the Class Action Plaintiffs, which constitutes the

unnecessary and wanton infliction of pain to Class Action Plaintiffs. Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003) *citing* Estelle v. Gamble, 429 U.S. 97, 104 (1976).

189.    The experience and injuries of Lead Plaintiff Hambrick are memorialized in the Handwritten Medical Emergency Code Report attached herewith as Exhibit J, Naphcare Medical Records attached herewith as Exhibit K, Peachtree Medical Center Records attached herewith as Exhibit L, and photographs of Lead Plaintiff Hambrick upon release attached herewith as Exhibit M.

190.    The filthy, parasite and vermin infested, and overall unsanitary conditions are well-documented.

191.    Each Defendant is aware that the Jail's failure to remedy filthy, vermin and parasite infested, and overall unsanitary conditions, contributes to and perpetuates an excessive risk to the health and safety of detainees at Fulton County Jail, and each Defendant has failed to take steps to reduce the risk of harm, violating the Eighth and Fourteenth Amendment prohibition against cruel and unusual punishment.

192.    As a direct and proximate result of Defendants' deliberate indifference to excessive risks of harm, Plaintiffs have been injured, suffered severe and permanent pain, suffering, disability, impairment, loss of enjoyment of life,

loss of care, loss of comfort, and economic damages, including but not limited

to past and future medical expenses, lost income, and other damages. Plaintiffs

may also require additional medical and/or hospital care, attention, and

services in the future.

193.     Plaintiffs seek compensatory and punitive damages, together with

interest, to compensate them for the violations of their rights by Defendants.

194.     Plaintiffs seek declaratory and injunctive relief on behalf of themselves

and a class of similarly situated persons to prevent further violations of their

rights by Defendants.

## COUNT V

## 42 U.S.C. § 1983 EIGHTH AMENDMENT AND FOURTEENTH AMENDMENT DELIBERATE INDIFFERENCE TO SUBSTANTIAL RISK OF HARM AND SERIOUS INJURY FROM UNAUTHORIZED USE OF FORCE BY DETENTION OFFICERS

195.     The Lead Plaintiffs and Class Plaintiffs are entitled to the protection of

constitutional rights under the Eighth Amendment and Fourteenth

Amendment including protection from deliberate indifference to their safety

and well-being.

196.     At all relevant times, the collective Defendants were responsible for

operating Fulton County Jail, funding operations at Fulton County Jail,

directing activities of staff, detention officers, and detainees at Fulton County

50

Jail, and conducting, documenting, and performing necessary and essential functions in the operation of Fulton County Jail.

197.    The claims against Defendants are based on the negligence, policies, customs, and deliberate indifference of Defendant Sheriff Labat, Defendant Jackson, and all medical and administrative staff and detention officers responsible for the conditions at Fulton County Jail.

198.    At all relevant times, Defendants acted under the color of state law.

199.    At all relevant times, Defendant Naphcare and medical professionals employed by Naphcare, acted with deliberate indifference to the serious medical needs of the Class Action Plaintiffs, which constitutes the unnecessary and wanton infliction of pain to Class Action Plaintiffs. Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003) *citing* Estelle v. Gamble, 429 U.S. 97, 104 (1976).

200.    Fulton County Jail officers routinely use unreasonable force, often without first attempting to resolve the situation peacefully. Although Jail policy requires all available alternatives to be used before resorting to physical force, officers rarely if ever try de-escalation techniques or even call for assistance before using force. In some cases, officers do not even give commands or verbal warnings before resorting to force. Exhibit A, p. 36.

201.    The August 10, 2024, Jail Incident Report attached herewith under Exhibit H demonstrates an incident wherein a detention officer did not call for assistance, give a verbal command or warning, or resort to any alternatives before using physical force on detainee, who was received verbal harassment from rival detainees due to his LGBTQ status.

202.    Each Defendant is aware that the unauthorized use of force is a direct and excessive risk to the health and safety of detainees at Fulton County Jail, and each Defendant has failed to take steps to reduce the risk of harm, violating the Eighth and Fourteenth Amendment prohibition against cruel and unusual punishment.

203.    As a direct and proximate result of Defendants' deliberate indifference to excessive risks of harm, Plaintiffs have been injured, suffered severe and permanent pain, suffering, disability, impairment, loss of enjoyment of life, loss of care, loss of comfort, and economic damages, including but not limited to past and future medical expenses, lost income, and other damages. Plaintiffs may also require additional medical and/or hospital care, attention, and services in the future.

204.    Plaintiffs seek compensatory and punitive damages, together with interest, to compensate them for the violations of their rights by Defendants.

205.     Plaintiffs seek declaratory and injunctive relief on behalf of themselves

and a class of similarly situated persons to prevent further violations of their

rights by Defendants.

## COUNT VI

### 42 U.S.C. § 1983 EIGHTH AMENDMENT AND FOURTEENTH AMENDMENT DELIBERATE INDIFFERENCE TO SUBSTANTIAL RISK OF HARM AND SERIOUS INJURY FROM INADEQUATE PROVISION OF HEALTCHARE INLCUDING MENTAL HEALTHCARE

206.     The Lead Plaintiffs and Class Plaintiffs are entitled to the protection of

constitutional rights under the Eighth Amendment and Fourteenth

Amendment including protection from deliberate indifference to their safety

and well-being.

207.     At all relevant times, the collective Defendants were responsible for

operating Fulton County Jail, funding operations at Fulton County Jail,

directing activities of staff, detention officers, and detainees at Fulton County

Jail, and conducting, documenting, and performing necessary and essential

functions in the operation of Fulton County Jail.

208.     The claims against Defendants are based on the negligence, policies,

customs, and deliberate indifference of Defendant Sheriff Labat, Defendant

Jackson, and all medical and administrative staff and detention officers

responsible for the conditions at Fulton County Jail.

209.    At all relevant times, Defendants acted under the color of state law.

210.    At all relevant times, Defendant Naphcare and medical professionals employed by Naphcare, acted with deliberate indifference to the serious medical needs of the Class Action Plaintiffs, which constitutes the unnecessary and wanton infliction of pain to Class Action Plaintiffs. Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003) *citing* Estelle v. Gamble, 429 U.S. 97, 104 (1976).

211.    Each Defendant is aware that the Jail's failure to provide medical and mental health care exposes detainees to an increased risk of injury, serious illness, pain and suffering, mental health decline, and death, and each Defendant has failed to take steps to reduce the risk of harm, violating the Eighth and Fourteenth Amendment prohibition against cruel and unusual punishment.

212.    As a direct and proximate result of Defendants' deliberate indifference to excessive risks of harm, Plaintiffs have been injured, suffered severe and permanent pain, suffering, disability, impairment, loss of enjoyment of life, loss of care, loss of comfort, and economic damages, including but not limited to past and future medical expenses, lost income, and other damages. Plaintiffs may also require additional medical and/or hospital care, attention, and services in the future.

213.    Plaintiffs seek compensatory and punitive damages, together with interest, to compensate them for the violations of their rights by Defendants.

214.    Plaintiffs seek declaratory and injunctive relief on behalf of themselves and a class of similarly situated persons to prevent further violations of their rights by Defendants.

## COUNT VII

### 42 U.S.C. § 1983 EIGHTH AMENDMENT AND FOURTEENTH AMENDMENT DELIBERATE INDIFFERENCE TO SUBSTANTIAL RISK OF HARM AND SERIOUS INJURY FROM INADEQUATE STAFFING AND SUPERVISION TO KEEP DETAINEES SAFE

215.    The Lead Plaintiffs and Class Plaintiffs are entitled to the protection of constitutional rights under the Eighth Amendment and Fourteenth Amendment including protection from deliberate indifference to their safety and well-being.

216.    At all relevant times, the collective Defendants were responsible for operating Fulton County Jail, funding operations at Fulton County Jail, directing activities of staff, detention officers, and detainees at Fulton County Jail, and conducting, documenting, and performing necessary and essential functions in the operation of Fulton County Jail.

217.    The claims against Defendants are based on the negligence, policies, customs, and deliberate indifference of Defendant Sheriff Labat, Defendant

Jackson, Defendant Naphcare, and all medical and administrative staff and detention officers responsible for the conditions at Fulton County Jail.

218.     At all relevant times, Defendants acted under the color of state law.

219.     At all relevant times, Defendant Naphcare and medical professionals employed by Naphcare, acted with deliberate indifference to the serious medical needs of the Class Action Plaintiffs, which constitutes the unnecessary and wanton infliction of pain to Class Action Plaintiffs. Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003) *citing* Estelle v. Gamble, 429 U.S. 97, 104 (1976).

220.     Plaintiff Jackson suffered injuries in a shanking attack on the Sixth Floor of the North Tower, at a time when there was no tower officer assigned to that floor. The presence of a tower officer would have deterred the attack on Shannon Jackson. See Exhibit O.

221.     Defendant Labat has advised members of BJA, DOJ, and NIC that the number of uniformed staff vacancies in the Jail is at a critical staffing shortage level.

222.     Each Defendant is aware that the Jail's failure to provide adequate staffing and supervision to keep detainees safe exposes detainees to an increased risk of injury, serious illness, pain and suffering, mental health decline, and death, and each Defendant has failed to take steps to reduce the

risk of harm, violating the Eighth and Fourteenth Amendment prohibition against cruel and unusual punishment.

223. As a direct and proximate result of Defendants' deliberate indifference to excessive risks of harm, Plaintiffs have been injured, suffered severe and permanent pain, suffering, disability, impairment, loss of enjoyment of life, loss of care, loss of comfort, and economic damages, including but not limited to past and future medical expenses, lost income, and other damages. Plaintiffs may also require additional medical and/or hospital care, attention, and services in the future.

224. Plaintiffs seek compensatory and punitive damages, together with interest, to compensate them for the violations of their rights by Defendants.

225. Plaintiffs seek declaratory and injunctive relief on behalf of themselves and a class of similarly situated persons to prevent further violations of their rights by Defendants.

## PRAYER FOR RELIEF

For the foregoing reasons, Plaintiffs respectfully ask that this Court:

(1) Assume jurisdiction over this action;

(2) Certify this case as a class action under Rule 23 of the Federal Rules of Civil Procedure;

(3) Declare that Defendants are violating the Eighth Amendment and Fourteenth Amendment Rights of Plaintiffs and other class members as described in this Complaint;

(4) Enter preliminary and permanent injunctive relief against Defendants requiring Defendants to:

> (a) Develop and implement a comprehensive plan to reduce the availability of raw materials that are used to create hand-made shanks; and

> (b) Establish policies that ensure safety and security of all people in Fulton County Jail and ensure all staff adhere to them, including by training staff, supervising staff, and holding them accountable for violating jail policies; and

> (c) Establish generally accepted classification systems and housing plans for incarcerated people that incentives prosocial behaviors,

disincentivize misconduct, and offers adequate protections to vulnerable populations; and

(d) Conduct an exhaustive review and analysis of cell door locking mechanisms and zone door locking mechanisms, with the primary goal to eliminate detainees' ability to pop doors open or hold doors open without authorization, and consider replacing or modifying the locking mechanisms to eliminate failures and improve detainee safety; and

(e) Retrain staff as to the use of force requirements, modify existing plans and policies to adhere to constitutional standards for use of force, promptly discipline staff for misconduct; and

(f) Implement and ensure adherence to thorough sanitation policies, ensuring regular, scheduled cleaning and sanitation for all areas of the Jail, in particular cells, medical areas, and food preparation areas; and

(g) Develop and implement a comprehensive Integrated Pest Management system for all parts of the Jail to reduce/eliminates pests; and

(h) Modify and implement policies, procedures, and practices for medical care in the Jail to ensure adhere to constitutional standards for

responsiveness to medical needs, including but not limited to mental health treatment.

    (i) Implement a grievance procedure that is readily available and adequately responds to grievances filed by detainees.

(5) Enter judgment in Plaintiffs' favor for compensatory relief for injuries suffered at Fulton County Jail, which were caused by stabbings, health conditions arising from unsanitary and bug-ridden conditions, and excessive use of force by detention officers.

(6) Enter judgment in Plaintiffs' favor for punitive damages, together with interest; and

(7) That a jury trial be had on all issues; and

(8) Award Plaintiffs reasonable attorney's fees, expenses, and costs of litigation under 42 U.S.C. § 1988 and other applicable law; and

(9) A written consent decree monitored by the Court to ensure the completion of the aforementioned requested relief; and

(10)    Award such other and further relief as this Court deems just and proper.

This 10th day of December 2024.


[signature on following page]

Respectfully submitted,

**MICHAEL D. HARPER, P.C.**

/s/ Michael D. Harper
Michael D. Harper
Georgia Bar No. 328378
Patrick W. Leed
Georgia Bar No. 454862
Attorneys for Class Action Plaintiffs

Michael D. Harper, P.C.
3017 Bolling Way, N.E., Suite 150
Atlanta, Georgia 30305
Telephone: (404) 271-6618
Facsimile: (404) 600-2146
Email: Mharper@mharperlaw.com
PLeed@mharperlaw.com

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(D), I hereby certify that the foregoing has been prepared in compliance with Local Rule 5.1(B) in Times New Roman 14-point typeface.

Respectfully submitted,

**MICHAEL D. HARPER, P.C.**

/s/ Michael D. Harper
Michael D. Harper
Georgia Bar No. 328378
Patrick W. Leed
Georgia Bar No. 454862
Attorneys for Plaintiff

Michael D. Harper, P.C.
3017 Bolling Way, N.E., Suite 150
Atlanta, Georgia 30305
Telephone: (404) 271-6618
Facsimile: (404) 600-2146
Email: Mharper@mharperlaw.com
PLeed@mharperlaw.com