**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

NKENEGEN HAMBRICK, *et al.*,

   Plaintiffs,

                v.

FULTON COUNTY SHERIFF PATRICK LABAT, *et al.*,

   Defendants.

Civil Action No.
1:24-cv-05658-SDG-CCB

**OPINION AND ORDER**

This matter is before the Court on several motions to dismiss the first amended complaint filed by Plaintiffs Nkengen[1] Hambrick and Shannon Jackson. Fulton County Sheriff Patrick Labat and former Fulton County Chief Jailer John Jackson filed a motion to dismiss only as to claims in their official capacities [ECF 16]. Those two Defendants filed a second motion to dismiss, this time in their official capacities, along with Defendants Fulton County; Commission Chairman Robb Pitts, in his individual capacity; Commissioner Bridget Thorne, in her individual capacity; Commissioner Bob Ellis, in his individual capacity; Commissioner Dana Barrett, in her individual capacity; Commissioner Mo Ivory, in her individual capacity; and Commissioner Khadijah Abdur-Rahman, in her individual capacity [ECF 28]. And finally, Commissioner Marvin S. Arrington, Jr.,

---

[1] Plaintiff Hambrick's first name is spelled "Nkenegen" in some places and "Nkengen" in others. *See, e.g.*, ECFs 1, 12, 18.

filed a motion to dismiss in his individual capacity [ECF 29]. Plaintiffs have responded,[2] and one reply brief has been filed.[3] There is a fair bit of overlap in the various arguments, so undersigned will take up all of the motions in this Order. For the reasons that follow, the various motions are **GRANTED IN PART, DENIED IN PART,** and **DENIED AS MOOT IN PART**.

## I.      Background

This lawsuit relates to conditions at the Fulton County Jail ("the Jail") in Atlanta, Georgia. Plaintiffs Hambrick and Jackson were previously incarcerated at the Jail.[4] The Fulton County Sheriff's Office has adopted Jail Operations Standard Operating Procedures regarding matters such as sanitation, inspections, and housekeeping.[5] The Sheriff's Office has also adopted Jail Bureau Policies and Procedures regarding classification of inmates.[6]

---

[2]   ECFs 18, 30, 31.

[3]   ECF 32.

[4]   ECF 12, at 41, 43. According to the amended complaint, Plaintiff Hambrick was incarcerated at the Jail from January 19, 2023, until June 21, 2023. *Id.* at 41. It appears that he was also incarcerated at the Jail from November 27, 2024, until January 10, 2025. *See* ECF 16, at 11; https://fcsoga.org/inmate-search/ [https:// perma.cc/Q2NB-C38F] (last visited Mar. 25, 2026). Plaintiff Hambrick's claims appear to pertain to the former period of incarceration.

[5]   ECF 12, at 26; *see also* ECFs 1-2, 1-3, 1-4, 1-5.

[6]   ECF 12, at 27; *see also* ECF 1-6.

According to the amended complaint, Defendant Labat "has publicly admitted that he lacks the resources to carry out his legally mandated responsibility to protect the constitutional rights of pre-trial detainees at Fulton County Jail."[7] Plaintiffs claim that there is "a longstanding and ongoing" risk of harm to detainees "arising from the presence of handmade shanks, non-working or dysfunctional cell door locks, unsanitary bug-ridden conditions, and excessive use of force by detention officers."[8] Defendant Labat "has explained to the Fulton County Board of Commissioners and to the general public on multiple occasions (including in 2021, 2022, and 2023) why there is such a proliferation of homemade knives and shanks at the Fulton County Jail. Detainees at the Jail fashion metallic weapons from the crumbling physical infrastructure of the Jail."[9]

Defendant Labat gave the Fulton County Commissioners a tour of the Jail in 2021, which allowed the Commissioners to "observe firsthand the deteriorating infrastructure at the Fulton County Jail, which infrastructure was and still is being used by inmates to" make weapons.[10] A 2022 sweep of the Jail "resulted in the discovery of nearly one hundred knives or shanks."[11] In July 2024, Defendant

---

[7]    ECF 12, at 27.

[8]    *Id.*

[9]    *Id.* at 28.

[10]    *Id.*

[11]    *Id.*

3

Labat stated at a news conference that, since June 1, 2024, there had been ten stabbings and that 75 weapons had been confiscated at the Jail.[12]

In response to a 2022 request from Defendant Labat, on July 21, 2023, representatives of the National Institute of Corrections ("NIC"), Department of Justice ("DOJ"), and Bureau of Justice Assistance ("BJA") visited the Jail.[13] During the visit, Defendant Labat informed the representatives of the problems with weapons and staffing at the Jail.[14] The DOJ launched an official investigation into the Jail on July 13, 2023.[15]

According to the amended complaint, "[t]he proliferation of shanks, detainees popping open locked doors, incidents of violence, failures to appropriately classify detainees, and unsanitary living conditions at the Fulton County Jail continues unabated."[16] Plaintiffs describe a detainee's death in a filthy cell, hundreds of cases of lice and/or scabies, cell doors being tampered with and opened, the Jail's healthcare provider's plan to terminate its contract because of

---

[12]   *Id.*

[13]   *Id.* at 29.

[14]   *Id.*

[15]   *Id.* at 30.

[16]   *Id.* at 32.

violence and unsafe working conditions,[17] and the harassment of an LGBTQ detainee.[18]

### A.    Plaintiff Hambrick

Plaintiff Hambrick was incarcerated at the Jail from January 19, 2023, until June 21, 2023.[19] While incarcerated, Plaintiff Hambrick "suffered severe wounds and sores on his torso and lower body as a result of the unsanitary conditions at the [J]ail."[20] On May 25, 2023, Plaintiff Hambrick was found lying face down on the floor in his cell.[21] The medical report stated that "responders were unable to assess Plaintiff Hambrick's neurological condition" and that he "was non-verbal, had rashes to his back and torso, and had negative physical findings for seizures, but the responder was unable to fully examine Mr. Hambrick."[22] After his release from the Jail, Plaintiff Hambrick was treated at Peachtree Medical Center, where the records stated that he had "20ish stab wounds, fe[lt] like he ha[d] bug bites,

---

[17]    *Id.* at 33. The dispute was ultimately resolved.

[18]    *Id.* at 32–36.

[19]    ECF 12, at 41.

[20]    *Id.*

[21]    *Id.*

[22]    *Id.*

possible spider bite on back of leg," and multiple skin ulcerations, including a "very large ulceration on his inner right thigh."[23]

### B.    Plaintiff Jackson

On July 4, 2022, Plaintiff Jackson "suffered serious injuries in an arranged shanking attack and attempted murder" at the Jail.[24] Plaintiff Jackson's assailant was able to attack him by popping open the cell door.[25] Plaintiff Jackson was transported to the hospital for treatment.[26] According to the amended complaint, if Plaintiff Jackson had been moved to a different floor, he would not have been at risk for the attack.[27]

On December 10, 2023, Plaintiff Jackson again "suffered serious injuries in an orchestrated shanking attack and attempted murder in his housing cell."[28] Plaintiff Jackson was transported to the hospital for treatment.[29] According to the amended complaint, if a tower officer had been on duty at the time of the December 10, 2023 attack, the officer could have deterred the attack.[30]

---

[23]    ECF 12, at 42; *see also* ECFs 1-12, 1-13.

[24]    ECF 12, at 43; *see also* ECF 1-14.

[25]    ECF 12, at 43.

[26]    *Id.*

[27]    *Id.*

[28]    *Id.* at 44; *see also* ECF 1-15.

[29]    ECF 12, at 44.

[30]    *Id.* at 45.

Plaintiffs bring the following claims:[31]

- Count I: Eighth and Fourteenth Amendment deliberate indifference to substantial risk of harm and serious injury from the pervasive presence of handmade shanks;

- Count II: Eighth and Fourteenth Amendment deliberate indifference to substantial risk of harm and serious injury from non-working and dysfunctional door locks;

- Count III: Eighth and Fourteenth Amendment deliberate indifference to substantial risk of harm and serious injury from Defendants' failure to use correctional processes such as classification, housing plans, assessment of the likelihood of victimization, and consideration of gang affiliations;

- Count IV: Eighth and Fourteenth Amendment deliberate indifference to substantial risk of harm and serious injury from "filthy, parasite and vermin infested, and overall unsanitary conditions";

- Count V: Eighth and Fourteenth Amendment deliberate indifference to substantial risk of harm and serious injury from unauthorized use of force by detention officers;

- Count VI: Eighth and Fourteenth Amendment deliberate indifference to substantial risk of harm and serious injury from inadequate provision of healthcare, including mental healthcare; and

- Count VII: Eighth and Fourteenth Amendment deliberate indifference to risk of harm and serious injury from inadequate staffing and supervision.

---

[31] *Id.* at 51–72.

7

## II.  Legal Standards

### A.  Rule 12(b)(1)

A motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) "can be based upon either a facial or factual challenge to the complaint." *McElmurray v. Consol. Gov't of Augusta-Richmond Cnty.*, 501 F.3d 1244, 1251 (11th Cir. 2007). "Facial attacks on the complaint require the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990) (internal quotation marks and alterations omitted). "Factual attacks, on the other hand, challenge the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered." *Id.* (internal quotation marks and alterations omitted).

### B.  Rule 12(b)(6)

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes dismissal of an action for failure to state a claim for relief. When considering a motion to dismiss pursuant to Rule 12(b)(6), the complaint is construed in the light most favorable to the plaintiff and its allegations are taken as true. *Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007); *Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1057 (11th Cir. 2007). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss

does not need detailed factual allegations," something "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action" is necessary. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting Fed. R. Civ. P. 8(a)(2)).

To state a claim for relief under § 1983, a plaintiff must show that (1) an act or omission deprived him of a right, privilege, or immunity secured by the Constitution or a statute of the United States; and (2) the deprivation occurred under color of state law. *Lane v. Philbin*, 835 F.3d 1302, 1307 (11th Cir. 2016).

## III.    Discussion

As mentioned above, there is significant overlap in arguments across the various motions to dismiss. Therefore, this Order addresses the arguments by issue, as opposed to strictly by motion. First up is an easy one—the arguments by Defendants Labat and Jackson that the Court should dismiss "all official-capacity claims for monetary damages, including punitive damages, on the grounds that such claims are barred by the Eleventh Amendment and that they are not 'persons' within the meaning of 42 U.S.C. § 1983."[32]

---

[32]    ECF 16, at 1.

### A.    Official-Capacity Claims Against Labat and Jackson for Monetary Damages

Labat and Jackson argue that any official-capacity claims for monetary damages are barred by the Eleventh Amendment and because, in their official capacities, Defendants are not "persons" under § 1983.[33] Plaintiffs respond that they are seeking monetary damages against Defendants only in their personal capacities.[34] Because Plaintiffs do not seek monetary damages against these Defendants in their official capacities, this portion of Labat and Jackson's motion to dismiss,[35] is denied as moot.

### B.    Statute of Limitations

This issue is also straightforward. All Defendants argue that any claims based on events that occurred prior to December 10, 2022, or more than two years prior to the filing of this action, are barred by the statute of limitations.[36] Plaintiffs recognize the limitations issue and respond that they bring claims only for injuries that occurred after December 10, 2022, and that references to earlier events are for

---

[33]    *Id.* at 7–9.

[34]    ECF 18, at 10–13.

[35]    ECF 16.

[36]    ECF 16, at 17; ECF 28, at 25; ECF 29, at 15.

10

demonstrative purposes only.[37] Accordingly, this portion of Defendants' motions to dismiss,[38] is denied as moot.

### C.    Shotgun Pleading

All Defendants argue that Plaintiffs' amended complaint should be dismissed as an improper shotgun pleading.[39] Defendants point out that the counts in the amended complaint repeatedly refer to "Defendants," without each count specifying the Defendant or Defendants relevant to that count.[40] They argue, essentially, that Defendants are lumped together and cannot determine what is alleged against whom.

"Complaints that violate either Rule 8(a)(2) or Rule 10(b) [of the Federal Rules of Civil Procedure], or both, are often disparagingly referred to as 'shotgun pleadings.'" *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1320 (11th Cir. 2015). The Eleventh Circuit has identified "four rough types or categories" of shotgun pleadings. *Id.* at 1321. The first is "a complaint containing multiple counts where each count adopts the allegations of all preceding counts." *Id.* at 1321–22. The second is a complaint that is "replete with conclusory, vague, and immaterial

---

[37]    ECF 18, at 16–17.

[38]    ECF 16; ECF 28; ECF 29.

[39]    ECF 16, at 4–6; ECF 28, at 2–4; ECF 29, at 2–4.

[40]    ECF 28, at 4. The motions make very similar, if not identical, arguments. This section cites to only one motion as an exemplar.

facts not obviously connected to any particular cause of action." *Id.* at 1322. The third is "one that commits the sin of not separating into a different count each cause of action or claim for relief." *Id.* at 1322–23. And the fourth is "the relatively rare sin of asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Id.* at 1323. "The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Id.*

Defendants do not expressly identify which type of shotgun pleading they refer to, but do specifically quote the Eleventh Circuit's language referring to complaints that are "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action."[41] (quoting *Weiland*, 792 F.3d at 1322). Defendants also maintain that the amended complaint is replete with references to nonspecific "Defendants."[42] And they ask that Plaintiffs be required to "replead with greater specificity regarding the meaning of 'Defendants.'"[43] However, throughout the amended complaint, Plaintiffs specify that they are

---

[41]  *Id.* at 3.

[42]  *Id.* at 4.

[43]  *Id.*

referring to "the collective Defendants" and "each Defendant."[44] The amended complaint is by no means perfect, but it is clear that each claim is brought against each Defendant, and it gives Defendants adequate notice of the claims against them and the grounds upon which each claim rests. Paragraphs are numbered, the claims are separated out, it is relatively clear which facts go with which claims, and although lengthy, the amended complaint is sufficiently well organized and easy to follow. Defendants' request to dismiss it as a shotgun pleading is denied.

### D.     Individual Capacity Claims Against Defendants Labat and Jackson

Defendants Labat and Jackson argue that Plaintiffs' individual capacity claims against them are barred by the doctrine of qualified immunity.[45] They argue that, because "the First Amended Complaint does not allege that Sheriff Labat or Chief Jailer Jackson personally deprived Plaintiffs of their constitutional rights, Plaintiffs['] individual-capacity claims against them as supervisors may survive only if Plaintiffs allege facts showing a causal connection between the actions of Sheriff Labat or Chief Jailer Jackson and the alleged constitutional violations."[46] They walk through the various counts and contend that such a causal connection is missing as to each.

---

[44]    *See, e.g.*, ECF 12, at 39–40, 51–72.

[45]    ECF 28, at 4–12.

[46]    *Id.* at 5.

13

Government officials sued in their individual capacities are immune from suit if their alleged conduct does not violate clearly established federal rights of which a reasonable person would have known. *Brown v. City of Huntsville*, 608 F.3d 724, 733 (11th Cir. 2010). To prevail on a claim of qualified immunity, the official must first show that he was acting within the scope of his discretionary authority when the allegedly unconstitutional events occurred. *Id.* at 734 n.14. If the official makes this showing, the plaintiff then must satisfy a two-part inquiry to defeat a claim of qualified immunity. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). The first part of this inquiry is whether the plaintiff's allegations, if true, establish a constitutional violation. *Id.* The second part of the inquiry is whether the right violated was clearly established at the time the official acted. *Id.* The official loses qualified immunity only if the plaintiff satisfies both inquiries, and courts may conduct the two-part inquiry in whatever order they deem appropriate. *Brown*, 608 F.3d at 734.

As Plaintiffs point out, "Sheriff Labat and Chief Jailer Jackson fail to make a showing that they were performing discretionary functions."[47] "To establish the defense of qualified immunity, the burden is first on the defendant to establish that the allegedly unconstitutional conduct occurred while he was acting within

---

[47]   ECF 30, at 5–6.

the scope of his discretionary authority. If, *and only if*, the defendant does that will the burden shift to the plaintiff to establish that the defendant violated clearly established law." *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1281 (11th Cir. 1998) (emphasis added) (internal citation omitted).

"To establish that the challenged actions were within the scope of his discretionary authority, a defendant must show that those actions were (1) undertaken pursuant to the performance of his duties, and (2) within the scope of his authority," and a "bald assertion that the acts were taken pursuant to the performance of duties and within the scope of duties will not suffice." *Id.* at 1282 (internal quotation marks omitted). Here, Defendants Labat and Jackson do not offer even a "bald assertion" that they were acting within the scope of their discretionary authority—they simply ignore the first part of the analysis (and the one on which they have the burden) altogether. "Although qualified immunity provides government officials with a formidable shield, their entitlement to raise that shield is not automatic." *Est. of Cummings v. Davenport*, 906 F.3d 934, 940 (11th Cir. 2018).

Defendants Jackson and Labat have failed to show that they were acting within the scope of their discretionary authority, and they are therefore not entitled to qualified immunity at this stage. Accordingly, this portion of the motion

15

to dismiss,[48] is denied without prejudice. These Defendants may renew their qualified immunity defense arguments at summary judgment.

### E.    Claims Against Fulton County

Defendant Fulton County argues that the claims against it are barred because Plaintiffs have not sufficiently alleged that an official policy, or an unofficial custom or practice of Fulton County, or a final policymaker, caused the alleged violations of their constitutional rights.[49] According to Fulton County, "there are no employees of the County, or anyone else subject to control by the County, who are alleged to have participated in the violations of Plaintiffs' constitutional rights."[50] Fulton County argues that Defendant Labat is not an employee of Fulton County, and "[e]veryone else identified in [Plaintiffs'] allegations—Chief Jailer Jackson and the administrative staff and detention officers who work at the Fulton County Jail—is employed by Sheriff Labat and is not subject to control by the County. Thus, there are no employees of the County, or anyone else subject to control by the County, who are alleged to have

---

[48]    ECF 28, at 4–12.

[49]    *Id.* at 12–15.

[50]    *Id.* at 15.

16

participated in the violations of Plaintiffs' constitutional rights."[51] (internal citations omitted).

"A county is liable under section 1983 only for acts for which the county is actually responsible." *Grech v. Clayton Cnty.*, 335 F.3d 1326, 1329 (11th Cir. 2003) (internal quotation marks and alteration omitted). A plaintiff must identify a "municipal policy or custom that caused his injury." *Id.* (internal quotation marks and alteration omitted). A plaintiff can establish a county's policy by identifying "either (1) an officially promulgated county policy or (2) an unofficial custom or practice of the county shown through the repeated acts of a final policymaker for the county." *Id.* "Because a county rarely will have an officially-adopted policy of permitting a particular constitutional violation, most plaintiffs . . . must show that the county has a custom or practice of permitting it and that the county's custom or practice is the moving force behind the constitutional violation." *Id.* at 1330 (internal quotation marks and alterations omitted). "Under either avenue, a plaintiff (1) must show that the local governmental entity, here the county, has authority and responsibility over the governmental function in issue and (2) must identify those officials who speak with final policymaking authority for that local governmental entity concerning the act alleged to have caused the particular

---

[51]    *Id.* at 14–15.

constitutional violation in issue." *Id.* Plaintiffs do not allege that the county had an officially promulgated county policy, so the relevant inquiry is whether there is an unofficial custom or practice that caused a constitutional violation.

In the amended complaint, Plaintiffs allege that their claims against all Defendants "are based on the negligence, policies, customs, and deliberate indifference of Defendant Sheriff Labat, Defendant Jackson, Defendant Fulton County, and all medical and administrative staff and detention officers responsible for the conditions at Fulton County Jail."[52] Fulton County argues that Plaintiffs have failed to identify any "employees of the County, or anyone else subject to control by the County, who are alleged to have participated in the violations of Plaintiffs' constitutional rights."[53] Additionally, "Sheriff Labat is not a final policymaker for the County, and so the County cannot be liable under Section 1983 for any unofficial custom or practice that Sheriff Labat may have had."[54] Therefore, according to Fulton County, Plaintiffs have failed to "identify those officials who speak with final policymaking authority for that local governmental entity concerning the act alleged to have caused the particular constitutional violation in issue." *Grech*, 335 F.3d at 1330.

---

[52]   ECF 12, at 52.

[53]   ECF 28, at 15.

[54]   *Id.*

18

Plaintiffs respond that, throughout the amended complaint, they have "unequivocally alleged deliberate indifference to jail conditions that fall within the County's duties under Georgia Law."[55] Specifically, Plaintiffs point to O.C.G.A. § 36-9-5(a), which provides that "[i]t is the duty of the county governing authorities to erect or repair, when necessary, their respective courthouses and jails."[56] The statute further provides that county buildings shall be erected and kept in order "at the expense of the county under the direction of the county governing authority" that is authorized to make the contracts necessary for that purpose. O.C.G.A. § 36-9-5(b). Nevertheless, even in their response to the motion to dismiss,[57] Plaintiffs do not claim to have identified "an unofficial custom or practice of the county." *Grech*, 335 F.3d at 1329. For example, in their amended complaint, Plaintiffs do not point to any funding requests that the County denied. *See Stuppard-Wilson v. Fulton Cnty.*, No. 1:24-CV-3400-TWT, 2025 WL 2484199, at *5 (Aug. 28, 2025), *reconsideration denied,* 2025 WL 3124449 (N.D. Ga. Nov. 7, 2025).

Another judge of this Court recently considered a very similar issue in *Stuppard-Wilson*, and undersigned finds this analysis persuasive. There, the plaintiff argued that Fulton County's failure to adequately fund the jail resulted in

---

[55]  ECF 30, at 14.

[56]  *Id.* at 13–14.

[57]  *See generally id.*

a proliferation of violence at the jail, often carried out through the use of handmade shanks, and that the underfunding amounted to a deliberate indifference to the plaintiff's rights. 2025 WL 2484199, at *5. In granting the county's motion to dismiss, the court noted that the plaintiff had "not properly alleged that the County had a custom or policy that constituted deliberate indifference to those rights. . . . A single denied funding request and a general allegation that other funding requests were denied are insufficient under Eleventh Circuit law to establish a persistent and wide-spread practice of underfunding the jail." *Id.* (internal quotation marks omitted); *see also id.* ("[T]he only funding request that the Plaintiff specifically identifies was made prior to [the alleged incident], and there are no allegations in the Supplemental Complaint that the County was informed of the handmade weapons issue at that time."). Whether viewed through the lens of a failure to fund or a failure to otherwise maintain the physical structure of the Jail, Plaintiffs have not alleged an unofficial custom or practice of Fulton County. Simply alleging the existence of shanks or non-working doors is not the same as alleging an unofficial custom or practice.

Instead, Plaintiffs argue that "[t]he existence of an unofficial policy or custom of Fulton County may be unearthed in discovery."[58] This is not sufficient

---

[58]   *Id.* at 16.

to survive a motion to dismiss.[59] "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . . . [The Federal Rules of Civil Procedure] do[ ] not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678–79. Accordingly, the motion to dismiss,[60] as to Fulton County is granted.

### F.      Claims Against Fulton County Commissioners

In the amended complaint, Plaintiffs bring claims against the Fulton County Commissioners in their individual capacities.[61] The Commissioners argue that the claims are subject to dismissal on the basis of legislative immunity.[62] According to the Commissioners, "the only possible basis for Plaintiffs' claims against the

---

[59]   Plaintiffs cite the wrong standard for evaluating a motion to dismiss, directing the Court to the long-defunct suggestion that dismissal is appropriate only where it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim. [ECF 30, at 5 (citing *Marsh v. Butler Cnty.*, 268 F.3d 1014, 1022 (11th Cir. 2001) and *Conley v. Gibson*, 355 U.S. 41 (1957))]. *See Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 563 (2007) (noting that the "no set of facts" passage from *Conley* "has earned its retirement. The phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard: once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint.").

[60]   ECF 28.

[61]   ECF 12, at 22.

[62]   ECF 28, at 15–17; ECF 29, at 4–7. Unless otherwise specified, "Commissioners" refers to all named Commissioners, even though Defendant Commissioner Arrington filed a motion to dismiss, *see* ECF 29, separate from the other Defendant Commissioners, *see* ECF 28.

Commissioners is their performance or non-performance of legislative functions, particularly in determining whether the Jail is adequately funded. . . . [B]ut because funding is a quintessential legislative function, they are entitled to legislative immunity as to all claims."[63]

"Legislators have absolute immunity under section 1983 when they are acting within their legislative roles, performing legislative acts." *Woods v. Gamel*, 132 F.3d 1417, 1419 (11th Cir. 1998) (internal quotation marks omitted). "[T]he immunity extends only to actions taken within the sphere of legitimate legislative activity." *Id.* (internal quotation marks omitted). "[B]udgetary decisions made by [commissioners] for funding the county—including the jail—are legislative acts protected by legislative immunity." *Id.* at 1420.

In responding to the motions to dismiss, Plaintiffs point to *Yeldell v. Cooper Green Hospital, Inc.*, 956 F.2d 1056 (11th Cir. 1992), in support of their argument that legislative immunity does not apply here.[64] *Yeldell* notes that certain acts, including "the administration of penal facilities," are not "an essential part of the legislative function" and therefore not generally protected by legislative immunity. *Id.* at 1062. In so noting, *Yeldell* cites to a case in which the Third Circuit determined that the local governmental body's "implementation of the daily

---

63   ECF 28, at 17; *see also* ECF 29, at 6–7.

64   ECF 30, at 18–20; ECF 31, at 13–15.

decisions involving the administration of the Jail was not legislative, but managerial." *Ryan v. Burlington Cnty.*, 889 F.2d 1286, 1291 (3d Cir. 1989). *Woods* and *Yeldell* suggest then that there is a distinction, for legislative immunity purposes, between passing a budget to fund a jail and acts taken to actually administer the operation of such a facility.

In arguing that the Commissioners played a role in the operations of the Jail, Plaintiffs maintain that, "[e]ven if Sheriff Labat does have some form of primary control or final responsibility for jail operations, State laws give[ ] Fulton County a duty to maintain the [J]ail, and the Fulton County Code of Ordinances authorizes the Board of Commissioners to maintain and operate jail facilities."[65] (citing O.C.G.A. § 36-9-5(a)–(b)). Plaintiffs further argue that, "[p]ursuant to the Code of Law of Fulton County, the Board of Commissioners is authorized to maintain and operate facilities for the detention, incarceration, or confinement of persons (including juveniles) subject to detention."[66] (citing Code of Laws of Fulton Cnty., Chapter 1, Art. II, Div. 3, Sec. 1–122). However, the Eleventh Circuit has concluded that that ordinance "does not give the County power to make rules and regulations for the administration of the Jail. Therefore, the [ordinance] does not alter the relationship among the State, the County, and the Sheriff, as the County continues

---

[65]   ECF 30, at 18; ECF 31, at 13.

[66]   ECF 30, at 21; ECF 31, at 15–16.

to have no say in how the Sheriff implements his policies at the Jail." *Powell v. Barrett*, 496 F.3d 1288, 1308 (11th Cir. 2007), *vacated on other grounds,* 541 F.3d 1298 (11th Cir. 2008) (en banc). Moreover, Georgia law makes clear that, "[o]nce a county commission adopts a budget for an elected constitutional county officer," such as a county sheriff, "the decision how to spend the funds allocated to that office falls solely to the constitutional officer in the exercise of his/her duties and the county commission may not dictate to the elected constitutional county officer how the budget will be spent." *Bd. of Comm'rs of Dougherty Cnty. v. Saba*, 278 Ga. 176, 177 (2004) (internal quotation marks and alterations omitted). All of this authority suggests that the Commissioners' role is to pass a budget allocating funds to the Sheriff for operation of the Jail, but that they then play no role in how that money is spent or allocated.

Plaintiffs claim that "Defendant Commissioners have undoubtedly allocated some responsibility for overseeing the [J]ail to one or several of their members, especially now, after the entry of the Consent Decree" Fulton County entered into with the Department of Justice in response to its investigation.[67] They further argue that "some Fulton County Commissioners must have worked with Sheriff Labat in some capacity to make decisions with respect to Fulton County

---

[67]   ECF 30, at 20; ECF 31, at 15.

24

Jail."[68] These speculative, conclusory statements are unsupported by any facts alleged in the amended complaint. And, as the Commissioners[69] point out, "even if the Commissioners have chosen to be involved in the process and even if Sheriff Labat has welcomed their input on issues relating to the Fulton County Jail, this would not confer on them the right to exercise control."[70] The Commissioners' actions amount to budgetary decisions for funding of the Jail, and the claims against them are therefore barred by legislative immunity and are dismissed.

### G.    Mootness

All Defendants argue that, to the extent that they seek declaratory and injunctive relief, Plaintiffs' claims against them are moot.[71] In addition to monetary relief, Plaintiffs seek "declaratory and injunctive relief to remedy the failure to provide constitutionally adequate medical treatment, the failure to remedy the known unconstitutional hazards to the health and safety of detainees at Fulton County Jail, and damages for the pain and suffering and wrongful death of Class Plaintiffs that were caused by the known unconstitutional jail conditions at Fulton

---

68    ECF 30, at 20; ECF 31, at 15.

69    Defendant Commissioner Arrington does not raise this argument. *See generally* ECF 29.

70    ECF 32, at 7.

71    ECF 16, at 10–16; ECF 28, at 18–24; ECF 29, at 7–14.

County Jail."[72] Defendants argue that these claims are moot for two reasons: first, Plaintiffs are no longer incarcerated at the Jail; second, Defendants "have agreed to implement certain corrective measures to remedy the allegedly unconstitutional practices and conditions at the Fulton County Jail."[73]

As an initial matter, Plaintiffs argue that they have suffered injuries from Defendants' past conduct that require redress, therefore their "claims for declaratory and injunctive relief are not moot."[74] In support of this argument, Plaintiffs cite *Keister v. Bell*, in which the Eleventh Circuit explained that "[c]easing an offending policy going forward does not redress an injury that occurred in the past. . . . [A] request for nominal damages saves a matter from becoming moot as unredressable when the plaintiff bases his claim on a completed violation of a legal right." 29 F.4th 1239, 1251 (11th Cir. 2022). However, Defendants do not argue that Plaintiffs' amended complaint is moot in its entirety; Defendants argue that Plaintiffs' claims "are moot to the extent they are seeking declaratory and injunctive relief."[75] The fact that Plaintiffs seek redress for past harms does not mean that their claims for declaratory and injunctive relief cannot be moot. *See,*

---

[72]   ECF 30, at 4.

[73]   ECF 28, at 18.

[74]   ECF 30, at 21–24.

[75]   ECF 28, at 18.

*e.g.*, *Moms for Liberty – Brevard Cnty. v. Brevard Pub. Sch.*, 118 F.4th 1324, 1335 (11th Cir. 2024) ("Though prospective relief barring enforcement of the pre-amendment policy is no longer available, nominal damages for past harms are."); *Cotterall v. Paul*, 755 F.2d 777, 780 (11th Cir. 1985) ("Cotterall's individual claim for injunctive relief, however, was moot and properly dismissed. Past exposure to illegal conduct does not in itself show a pending case or controversy regarding injunctive relief if unaccompanied by any continuing, present injury or real and immediate threat of repeated injury.") (internal quotation marks omitted).

For the reasons stated below, Plaintiffs' claims for declaratory and injunctive relief are dismissed as moot due to the policy changes and corrective measures implemented by Defendants; in the alternative, Plaintiffs' claims for declaratory and injunctive relief are dismissed as moot because they are no longer incarcerated at the Jail.

### 1. Corrective Measures

"Generally, the party asserting mootness bears the heavy burden of persuading the court that the challenged conduct cannot reasonably be expected to start up again." *Nat'l Ass'n of Boards of Pharmacy v. Bd. of Regents of the Univ. Sys. of Ga.*, 633 F.3d 1297, 1310 (11th Cir. 2011) (internal quotation marks omitted). However, "government actors enjoy a rebuttable presumption that the objectionable behavior will *not* recur." *Id.* (internal quotation marks and alterations

27

omitted). In considering this inquiry, a court must look to three factors: first, "whether the termination of the offending conduct was unambiguous"; second, "whether the change in government policy or conduct appears to be the result of substantial deliberation, or is simply an attempt to manipulate jurisdiction"; and third, "whether the government has consistently applied a new policy or adhered to a new course of conduct." *Id.* (internal quotation marks omitted).

### i. Unambiguous Termination

Defendants argue that their termination of the allegedly wrongful behavior was unambiguous because they entered into a consent decree with the DOJ. As noted above, the amended complaint alleges that DOJ began an investigation into the Jail that culminated in a 105-page report, which is referenced in, and attached to, the amended complaint.[76] Fulton County and Sheriff Labat entered into a consent decree with DOJ on January 6, 2025.[77] That agreement appears to cover all of the general subject matters of Plaintiffs' claims (handmade shanks in Count I; dysfunctional doors in Count II; correctional practices such as classification in Count III; unsanitary conditions in Count IV; use of force in Count V; mental healthcare in Count VI; and staffing in Count VII).[78] And Plaintiffs do not appear

---

[76]   ECF 12, at 2; ECF 1-1.

[77]   ECF 11-1.

[78]   *Id.*

to argue to the contrary—in other words, they do not appear to contend that the practices they complain about are not included within the DOJ's investigation or the consent decree.

According to Defendants, they cooperated with the DOJ's investigation prior to the filing of the instant action.[79] Although the consent decree was entered on January 6, 2025, after Plaintiffs initiated this case on December 10, 2024, the DOJ's investigation began in July 2023 and the consent decree[80] indicates that Fulton County and the Fulton County Sheriff's Office cooperated throughout the investigation and have "taken steps to address" concerns at the Jail.[81] Defendants outline the corrective measures they began to implement before the DOJ issued its final report or proposed corrective measures in the consent decree:

> [Fulton] County and Sheriff Labat began taking corrective measures during the investigation, including (1) reducing the population of the Jail, (2) rehabilitating the housing units in the Jail, (3) purchasing medical beds, (4) updating padded cells, (5) adding a padded cell at the South Annex, (6) repairing kitchen equipment, and (7) contacting the National Institute of Corrections for technical assistance. (ECF 11-1—Consent Decree ¶ 7.) Under these circumstances, it is unambiguous that the

---

[79]   ECF 28, at 22.

[80]   In considering a factually based motion to dismiss for lack of subject matter jurisdiction, a court may consider matters outside the pleadings. *Goodman ex rel. Goodman v. Sipos*, 259 F.3d 1327, 1331 n.6 (11th Cir. 2001).

[81]   ECF 11-1, at 4–6.

> allegedly wrongful behavior has been, or is in the process
> of being, terminated.[82]

Plaintiffs respond that Defendants have not unambiguously ceased their illegal conduct.[83] Plaintiffs do not allege that the illegal conduct has continued, but rather contend that the consent decree "only represents the outset of an attempt to change the conditions in the [J]ail and does not redress Plaintiff[s'] injuries."[84] Plaintiffs argue that they "seek relief in several forms, which the Consent Decree has only begun to address and only in part."[85]

Plaintiffs liken this case to *Roberts v. Secretary, Department of Corrections*, No. 23-12289, 2024 WL 1830713 (11th Cir. Apr. 26, 2024).[86] In *Roberts*, an inmate was repeatedly denied participation in a kosher meals program. *Roberts*, 2024 WL 1830713, at *1. Roberts filed suit, alleging violations of his First Amendment rights. *Id.* After filing his complaint, Roberts again applied to the kosher meals program. *Id.* at *2. The defendant forwarded the request to his supervisor for review, noting the pending lawsuit. *Id.* The supervisor indicated that the request should be approved, and Roberts was then placed in the kosher meal program. *Id.* The

---

[82]   ECF 28, at 22–23; ECF 11-1, at 5–6.

[83]   ECF 30, at 21–24.

[84]   *Id.* at 23.

[85]   *Id.* at 24.

[86]   *Id.* at 22.

Eleventh Circuit concluded that the defendants had not met their burden of showing unambiguous termination because (1) "a one-time approval of Roberts's application, particularly given the persistent rejections . . . [wa]s not a permanent guarantee that Roberts w[ould] not be wrongfully removed again from the" program, (2) "the timing and content of the FDC defendants' decision to place Roberts in the [program] appear[ed] to be an attempt to manipulate jurisdiction," and (3) there was no evidence that the defendants had consistently applied a new policy or adhered to a new course of conduct, and "there [wa]s no evidence of why Roberts was removed from the [program] in the first place." *Id.* at *4–5 (internal quotation marks and alterations omitted).

There are key differences between the circumstances of this case and those of *Roberts*. For example, in *Roberts*, the defendants did not cease the alleged wrongful conduct until after the plaintiff had filed suit. *Id.* at *2. In this case, although the consent decree was entered after Plaintiffs initiated this action, the DOJ's investigation began nearly a year and a half prior to filing, and the consent decree indicates that Fulton County and the Fulton County Sheriff's Office cooperated throughout the investigation and have "taken steps to address" concerns at the Jail.[87] Given the official policy changes, and the timing of those

---

[87] ECF 11-1, at 4–6.

changes and Defendants' cooperation with the DOJ's investigation, Defendants have met their burden of showing unambiguous termination.

### ii. Substantial Deliberation

The second factor looks to "whether the change in government policy or conduct appears to be the result of substantial deliberation, or is simply an attempt to manipulate jurisdiction." *Nat'l Ass'n of Boards of Pharmacy*, 633 F.3d at 1310. Defendants point out that the DOJ's investigation of the Jail lasted for approximately a year and a half, nearly all of which took place prior to the filing of this lawsuit, during which time the DOJ "had the full cooperation of [Fulton] County and Sheriff Labat."[88] Defendants argue that "there is no reason to believe that they went through all this effort to avoid this lawsuit, which was not filed until most of these actions had already been done."[89] Plaintiffs do not address this argument and do not argue that the changes in policy were not the result of substantial deliberation.[90] Defendants have met their burden of showing that the policy changes were the result of substantial deliberation.

---

[88]   ECF 28, at 23.

[89]   *Id.*

[90]   *See generally* ECF 30.

### *iii.* **Consistently Applied**

The third factor is "whether the government has consistently applied a new policy or adhered to a new course of conduct." *Nat'l Ass'n of Boards of Pharmacy*, 633 F.3d at 1310 (internal quotation marks omitted). Defendants concede that the consent decree was relatively recent, but claim that "there is no allegation of [Fulton] County and Sheriff Labat failing to implement new policies and procedures."[91] While they concede that "their work is not complete," Defendants claim that "they have started the process of reforming the operation of the Fulton County Jail consistent with the terms of the Consent Decree."[92] Plaintiffs point out that the consent decree requires that an "Implementation Plan" be put into place within 30 days of January 6, 2025, and that as of June 10, 2025, "there [was] no indication in [Defendants'] Motion to Dismiss, or upon searching the US DOJ and Fulton County Sheriff's website, that an Implementation Plan [was] in place."[93] However, that Defendants did not mention such a plan in their motion to dismiss and that an Implementation Plan was not published on those websites does not mean that one has not been put into place, and there is no indication that Fulton County and Sheriff Labat have not consistently applied their new policies. Indeed,

---

[91]   ECF 28, at 24.

[92]   *Id.*

[93]   ECF 30, at 23.

they have entered into a consent decree that is enforceable in this Court.[94] Defendants have met their burden of showing that they have "consistently applied a new policy or adhered to a new course of conduct." *Nat'l Ass'n of Boards of Pharmacy*, 633 F.3d at 1310 (internal quotation marks omitted). Accordingly, the request for declaratory and injunctive relief is moot, and this portion of Defendants' motion to dismiss,[95] is granted.

### 2.    Release From Incarceration

Defendants argue that Plaintiffs' claims for declaratory and injunctive relief are also moot because Plaintiffs are no longer incarcerated at the Jail.[96] Defendants claim that Plaintiff Jackson was released on December 17, 2024, and Plaintiff Hambrick was released on January 10, 2025.[97] Therefore, Defendants argue, the Court cannot grant them prospective injunctive relief.[98] Plaintiffs do not address this argument.[99]

---

[94]   ECF 11-1, at 67.

[95]   ECF 28.

[96]   *Id.* at 18–19.

[97]   *Id.* at 19. Although it appears that he was again incarcerated at the Jail from November 27, 2024 until January 10, 2025, Plaintiff Hambrick's claims seem to pertain exclusively to his 2023 incarceration. *See supra* note 2.

[98]   *Id.*

[99]   *See generally* ECF 30.

34

"The general rule in our circuit is that a transfer or a release of a prisoner from prison will moot that prisoner's claims for injunctive and declaratory relief." *Smith v. Allen*, 502 F.3d 1255, 1267 (11th Cir. 2007), *overruled on other grounds by Hoever v. Marks*, 993 F.3d 1353 (11th Cir. 2021); *see also Zatler v. Wainwright*, 802 F.2d 397, 399 (11th Cir. 1986) ("In view of Zatler's subsequent release, we find that his claims for declaratory and injunctive relief are now moot."). Accordingly, Plaintiffs' claims for declaratory and injunctive relief are moot due to their release from incarceration, and these claims are dismissed.

### H.      Fulton County's Immunity from Punitive Damages

Defendants point to Plaintiffs' amended complaint, in which Plaintiffs claim that they are entitled to an award of punitive damages against "Defendants."[100] Defendants argue, however, that Fulton County is immune from an award of punitive damages.[101] Plaintiffs do not address this argument in their response.[102] Defendants are correct that "a municipality is immune from punitive damages under 42 U.S.C. § 1983." *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981). Accordingly, this portion of Defendants' motion to dismiss is granted.

---

[100]   ECF 28, at 25 (citing ECF 12).

[101]   *Id.*

[102]   *See generally* ECF 30.

## IV.     Conclusion

For the reasons stated above, Defendants' motions to dismiss [ECFs 16, 28, 29] are **GRANTED IN PART** as to any claims against Fulton County, the Commissioners, and Plaintiffs' claims for prospective and injunctive relief; **DENIED IN PART** as to the claims against Defendants Jackson and Labat in their individual capacities and as to the argument that the amended complaint is a shotgun pleading; and **DENIED IN PART AS MOOT** as to Defendants' statute of limitations arguments and as to the suggestion that there are claims against Labat and Jackson in their official capacities.

The remaining Defendants are **ORDERED** to answer the remaining portions of the amended complaint no later than April 30, 2026.

The Clerk is **DIRECTED** to terminate the reference to the Magistrate Judge.

**SO ORDERED** this 31st day of March, 2026.

Steven D. Grimberg
United States District Judge